Cowley v. Smyth.

JAMES COWLEY v. ROBERT SMYTH.

1. In an action for deceit, a false representation without a fraudulent design is insufficient; there must be moral fraud in the misrepresentation to support the action.

2. Where the proof is that the representation was false to the defendant's knowledge, the *scienter* as well as the falsehood being proved, the proof of a fraudulent intent is regarded as conclusive. Evidence that the defendant intended no fraud will not be received, and the jury will be instructed to find for the plaintiff, though they should be of opinion that the defendant was not instigated by a corrupt motive of gain for himself, or by a malicious motive of injury to the plaintiff.

3. Where the representation was untrue, but was not false to the defendant's knowledge, and he has added to his representation an affirmation that he made the representation as of his own knowledge, the force and effect of the evidence will depend, in a great measure, on the nature of the subject matter concerning which the representation was made. If such a representation be with respect to a specific fact or facts susceptible of exact knowledge, and the subject matter be such that the affirmation of knowledge is to be taken in its strict sense, and not merely as a strong expression of belief, the falsehood of the representation is in the defendant's affirmation that he had sufficient knowledge to vouch for the truth of his assertions, and that being untrue, the

falsehood would be wilful, and therefore fraudulent. But where the representation is concerning a condition of affairs not susceptible of exact knowledge, such as representations with respect to the credit and solvency of a third person, or the condition and solvency of a financial institution, the assertion of knowledge is to be taken as meaning no other than a strong belief founded upon what appeared to the defendant to be reasonable and certain grounds. In such a case the question is wholly one of good faith : the defendant may avail himself of any evidence which may tend to show good faith and probable grounds for his belief; and the question for the jury will be whether his conduct was *bona fide* and he honestly believed that his representation was true.

4. In a suit by a depositor in a savings bank against a director, for deceit in representing that the bank was solvent when it was insolvent, and that the bank could not be insolvent without his knowledge, as he was one of the finance committee, there being no evidence that the defendant in fact knew the embarrassed condition of the bank—*Held*—

1. That an instruction to the jury " that if the defendant asserted the fact as to the condition of the bank as of his own positive knowledge, and did not in fact know what its condition was, then the plaintiff, acting upon that, and being injured, would be entitled to recover," was erroneous ; and,

2. That it should have been left to the jury to say whether, upon the evidence, the defendant made the representations with a fraudulent purpose to deceive, or whether he made them in good faith and in the honest belief that they were true.

5. *Haycraft* v. *Creasy*, 2 *East* 92, and *Taylor* v. *Ashton*, 11 *M. & W.* 401, approved and followed.

On case certified from the Hudson Circuit.

This suit was brought by a depositor in the Mechanics' and Laborers' Savings Bank in Jersey City, against the defendant, a director of the bank, to recover damages for false representations made by the defendant as to the solvency and condition of the bank, whereby the plaintiff was induced to leave in the bank money he had on deposit, which was lost by reason of the subsequent failure of the bank.

The certificate from the Circuit presents for the advisory opinion of this court the question whether there was error in these propositions in the charge to the jury :

1. That if the defendant made the representations as matter of his own knowledge, and so positively asserted that he knew

the fact to be as he represented, and the fact was not as he represented, although he may not have known them to be false, and the plaintiff acted upon the representations, they not being true, and suffered damage, the plaintiff may recover.

2. That if he asserted the fact as to the condition of the bank of his own positive knowledge, and did not in fact know what its condition was, then the plaintiff, acting upon that, and being injured, would be entitled to recover

Argued at February Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and VAN SYCKEL.

For the plaintiff, *E. S. Cowles.*

For the defendant, *Bentley & Hartshorne.*

The opinion of the court was delivered by

DEPUE, J.   This action is an action on the case for deceit. There is a distinction between relief, either affirmative or defensive, in courts of equity, on the ground of fraud, and the remedy for fraud in a court of law.   Courts of equity grant affirmative relief by way of reformation or cancellation of instruments, and even defensive relief in proceedings to enforce an obligation or liability, on the ground of constructive fraud, such as would afford no relief in law, especially by action for deceit.   2 *Pom. Eq.*, § 872 ; *Arkright* v. *Newbold, L. R.*, 17 *Ch. Div.* 302, 317, 330 ; *Redgrave* v. *Hurd*, 20 *Id.* 1, 12. *Reese River Silver Mining Co.* v. *Smith, L. R.*, 4 *H. of L. Cas.* 64, in which Lord Cairns held that "if persons make assertions of facts of which they are ignorant, whether such assertions are true or untrue, they become, in a civil point of view, as responsible as if they had asserted that which they knew to be untrue," is an instance of equitable relief by way of rescission.   The bill was filed by a subscriber for stock to be relieved from a subscription induced by false representations as to the property of the corporation. In that case, as appears in the report in *L. R.*, 2 *Ch. App.* 604, the directors issued the

Cowley v. Smyth.

prospectus containing the false statement on the faith of representations of the vendor of the property and without any knowledge of their untruth, and a subscriber for stock, who was misled by the representations, was relieved in equity from his subscription. The doctrine of equitable estoppel, or estoppel *in pais*, which has been adopted by courts of law from the courts of equity, also presents considerations which do not apply to an action for deceit. The theory on which that doctrine is founded is that a party should not be allowed to retract an admission or affirmation which was intended to influence the conduct of another, if the retraction would materially injure the latter. *Phillipsburg Bank* v. *Fulmer*, 2 *Vroom* 52, 55 ; *Campbell* v. *Nichols*, 4 *Id.* 81, 87. The cases which hold that an agent who, without competent authority, induces another to contract with him as the agent of a third party, is liable in damages without regard to his moral innocence in the supposition that he had the authority he assumed to have, also rest on a special ground—on the ground of an implied warranty of authority. *Randall* v. *Trimen*, 16 *C. B.* 786 ; *Collen* v. *Wright*, 8 *E. & B.* 647, 656 ; *Richardson* v. *Williamson*, *L. R.*, 6 *Q. B.* 276, 279 ; *Weeks* v. *Propert*, *L. R.*, 8 *C. P.* 427. The observation of Lord Hatherly that "if a man misrepresents a fact, to that fact he is bound if any other person, misled by such misrepresentation, acts upon it and thereby suffers damage," was made with respect to cases of this kind. *Beattie* v. *Lord Ebury*, *L. R.*, 7 *H. of L. Cas.* 102, 130.

The action of deceit, to recover damages for a false and fraudulent representation, differs in principle from the cases that have been referred to. In such an action a false representation, without a fraudulent design, is insufficient. There must be moral fraud in the misrepresentation to support the action. *Pasley* v. *Freeman*, 3 *T. R.* 51, and *Haycraft* v. *Creasy*, 2 *East* 92, are the leading cases on this subject. Both of these cases were decided by a divided court. In Paisley v. Freeman the question arose on a motion in arrest of judgment. The count in the declaration which gave rise to the motion averred that the defendant, "intending to deceive and defraud

the plaintiffs, did wrongfully and deceitfully encourage the plaintiffs to sell and deliver to one J. C. F. divers goods * * * upon trust, and did for that purpose * * * falsely, deceitfully and fraudulently assert and affirm to the plaintiffs that the said J. C. F. * * * was a person safely to be trusted and given credit to, and did thereby falsely, fraudulently and deceitfully cause and procure the plaintiffs to sell and deliver the said goods * * * upon trust and credit to the said J. C. F." The count also contained an averment that J. C. F. was not a person safely to be trusted and given credit to, and that the defendant well knew the same. The court held that a false affirmation, made with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action upon the case in the nature of deceit, and that as a matter of pleading, *fraudulenter* without *sciens*, or *sciens* without *fraudulenter*, would be sufficient, but that the fraud must be proved. Haycraft *v.* Creasy was before the court on a rule for a new trial, after a verdict for the plaintiff. In that case the defendant, to an inquiry by the plaintiff concerning the credit of another, made the representation that the party might safely be credited, and that he spoke this from his own knowledge and not from hearsay. The court (Gross, Lawrence and Le Blanc, JJ., Lord Kenyon dissenting,) held that the action could not be maintained, it appearing that the representation was made by the defendant *bona fide* and with a belief of the truth of it. Gross, J., said, " It is true that he [the defendant] asserted his own knowledge upon the subject; but consider what the subject matter was of which that knowledge was predicated. It was concerning the credit of another, which is a matter of opinion. When he used these words, therefore, it is plain that he meant only to convey his strong belief in her credit, founded upon the means he had of forming such opinion and belief. There is no reason for us to suppose that, at the time of making those declarations, *he meant to tell a lie and mislead the plaintiff.*" Lawrence, J., said, " The question is whether, if a person asserts that he knows such a one to be a person of fortune, and the

fact be otherwise, although the party making the assertion be-
lieved it to be true, an action will lie to recover damages for
an injury sustained in consequence of such misrepresentation.
*   *   *   Stress has been laid on the defendant's assertion of
his own knowledge of the matter; but persons in general are
in the habit of speaking in this manner without understanding
knowledge in the strict sense of the word in which a lawyer
would use it. *   *   *   In order to support the action the rep-
resentation must be made *malo animo.* It is not necessary that
the party should gain anything for himself by it. If he make
it with a malicious intention that another should be injured by
it, he shall make compensation in damages. But there must
be *something more than misapprehension or mistake.*" Le
Blanc, J., said, " By *fraud* I understand *an intention to de-
ceive.* Whether it be from any expectation of advantage to
the party himself, or from ill will towards the other, is im-
material. The question here is whether the defendant's *say-
ing that which, critically and accurately speaking, was not true,
but not having said it with intention to deceive, brings this case
within Paisley* v. *Freeman. I think not.*"

The Court of Queen's Bench departed from the doctrine of
Haycraft *v.* Creasy in two cases, and held that an action at
law might be maintained for false representations, though there
was neither fraud nor negligence. *Fuller* v. *Wilson,* 3 *Q. B.*
57 ; *Evans* v. *Collins,* 5 *Id.* 804. But Wilson *v.* Fuller was
reversed on error, (3 *Q. B.* 68, 1009,) and the question was
finally set at rest in the English courts in *Taylor* v. *Ashton,*
11 *M. & W.* 401, and *Ormrod* v. *Huth,* 14 *Id.* 651. In Tay-
lor *v.* Ashton the suit was against the directors of a banking
company for publishing a false report of the condition of the
bank. The report had been prepared by the officers of the
company, and adopted at a meeting of the directors. The
judge charged the jury that they must be satisfied that a
fraud—that is, a *moral fraud*—had been committed by the
defendants. The jury, under this instruction, found for the
defendants, stating, at the same time, that the defendants had
been guilty of gross and unpardonable negligence in publish-

ing the report.  On motion for a new trial the court held that an untrue representation made for a fraudulent purpose would sustain an action for deceit; that it was not necessary to show that the defendants knew the representation to be false if it was made for a fraudulent purpose, and that the proper question was left to the jury.   In delivering the judgment of the court, Parke, B., said, "It was contended that it was not necessary that moral fraud should be committed in order to render these persons liable;   *   *   *   that the jury found the defendants not guilty, but, at the same time, expressed their opinion that the defendants had been guilty of gross negligence, and that that, accompanied with a damage to the plaintiff,   *   *   *   would be sufficient to give him a right of action.   From this proposition," the learned judge added, "we entirely dissent, because we are of opinion that, independently of contract, no one can be made responsible for a representation unless it be *fraudulently* made."   In Ormrod *v.* Huth the action was in case for false representations.   The suit arose upon a sale of cotton by sample—the cotton delivered not being equal in quality with the sample.   The plaintiff's counsel contended that the delivery of samples not corresponding with the bulk was a false representation of the quality of the cotton, which must be considered, in point of law, as fraudulent, as being *the statement of a fact which the party making it did not know to be true.*   The judge directed the jury that unless they could see grounds for inferring that the defendants or their brokers were acquainted with the fraud that had been practiced in the packing, or had acted in the transaction against good faith or with a fraudulent purpose, the defendants were entitled to a verdict.   On error the Court of Exchequer Chamber sustained the charge of the judge. Tindal, C. J., delivering the opinion of the court, said that "the rule to be deduced from all the cases appears to us to be that where, upon the sale of goods, the purchaser is satisfied without requiring a warranty, he cannot recover upon a mere representation of the quality,   *   *   *   unless he can show that the representation was bottomed in fraud.  If, indeed,

the representation was false to the knowledge of the party making it, this would, in general, be conclusive evidence of fraud; but if the representation was honestly made, and believed at the time to be true by the party making it, though not true in point of fact, we think it does not amount to fraud in law." The English courts have considered these decisions as a finality, and it is now there settled that there can be no fraud without dishonest intention—no such fraud as was formerly termed legal fraud. 1 Benj. on Sales (Corbin's ed.), § 638.

The American cases, as might be expected of a subject so prolific of decisions, are not altogether harmonious. Mr. Pomeroy, speaking of the cases I have cited from the Queen's Bench as holding that a representation, false in fact, if acted upon, would support an action, and that the defendant's liability was independent of his knowledge or ignorance of its actual falsity, says, " This theory admitted the possibility of fraud at law where there was no moral delinquency. It denied that moral wrong was an essential element in the legal conception of fraud. The same view was for a time accepted and adopted by a considerable number of decisions in different American states. These cases have, however, been overruled, and the theory itself abandoned in England, and generally, if not universally, throughout the states of our own country. It is now a settled doctrine of the law that there can be no fraud, misrepresentation or concealment without some moral delinquency. There is no actual legal fraud which is not also a moral fraud." 2 Pom. Eq., § 884. The English and American cases are fully cited in the notes to Paisley v. Freeman, 2 Sm. Lead. Cas. 176–186. They have placed the law on this subject where it was put by Paisley v. Freeman and Haycraft v. Creasy, and have, I think, upon principle as well as by the great weight of authority, established the law on the rational basis that in the action for deceit, moral fraud is essential to furnish a ground of action.

The principle on which the action for deceit is founded being ascertained, the next consideration is with respect to the

proof and the proper instructions upon the evidence; for, whatever the character of the evidence may be—whether it consists of knowledge of the falsity of the representation or some other fraudulent device intended for the purpose of deception—the evidence must be submitted to the jury under proper instructions. And I think much of the apparent conflict in the cases has arisen from the failure to discriminate between the issue to be proved and the force and effect of the evidence presented.

The simplest form in which the question of the sufficiency of proof arises is where the proof is that the representation was false to the defendant's knowledge. The *scienter* as well as the falsehood being proved, proof of the fraudulent intent is regarded as conclusive. Evidence that the defendant intended no fraud will not be received, and the jury will be instructed to find for the plaintiff, though they should be of opinion that the defendant was not instigated by a corrupt motive of gain for himself, or by a malicious motive of injury to the plaintiff. *Foster* v. *Charles*, 6 *Bing.* 396; *S. C.*, 7 *Id.* 105; *Polhill* v. *Walter*, 3 *B. & Ad.* 114; and *Mylne* v. *Marwood*, 15 *C. B.* 778, are cases of this kind. In each of these cases the proof was that the representation was false to the knowledge of the defendant. The jury added to its finding an expression of opinion that there was no fraudulent intent, but the court nevertheless entered judgment for the plaintiff on the ground that a wilful falsehood was a fraud. The language of Lord Campbell in *Wilde* v. *Gibson*, 1 *H. of L. Cas.* 605, 633, was directed to cases of this aspect; and Jessel, M. R., in a case where it was proved that the representation was untrue to the defendant's knowledge, refused to receive evidence that he in fact believed it to be true. *Hine* v. *Campion*, *L. R.*, 7 *Ch. Div.* 344.

In other cases of actionable frauds, the probative force and effect of the evidence to establish the fraudulent intent will depend upon the circumstances of the particular case. This question is presented in a complex form where the defendant has added to a representation—which turns out to be untrue,

but was not false to his knowledge—an affirmation that he made the representation as of his own knowledge. In such cases the force and effect of the evidence will depend, in a great measure, upon the nature of the subject concerning which the representation was made. If it be with respect to a specific fact or facts susceptible of exact knowledge, and the subject matter be such as that the affirmation of knowledge is to be taken in its strict sense, and not merely as a strong expression of belief, the falsehood in such a representation lies in the defendant's affirmation that he had the requisite knowledge to vouch for the truth of his assertions, and that being untrue, the falsehood would be wilful and therefore fraudulent. But where the representation is concerning a condition of affairs not susceptible of exact knowledge, such as representations with respect to the credit and solvency of a third person, or the condition or credit of a financial institution, the assertion of knowledge, as was held in Haycraft v. Creasy, "is to be taken *secundum subjectam materiam,* as meaning no other than a strong belief founded upon what appeared to the defendant to be reasonable and certain grounds." In such a case the question is wholly one of good faith. The form of the affirmation will cast the burden of proof on the defendant, but when the evidence is in, the issue is whether the defendant *honestly* believed the representation to be true. In support of such an issue the defendant may, by way of exculpation, resort to evidence not admissible in actions for other kinds of deceit. He may, as in Haycraft v. Creasy, give evidence that the person whose ability he affirmed lived in a style, and with such appearances of property and means, as gave assurances of affluence. He may give in evidence the information he had upon the subject, (*Shrewsbury* v. *Blount,* 2 *M. & G.* 475,) and show the general reputation for trustworthiness of the person whose credit he affirmed. *Sheen* v. *Bumpsted,* 2 *H. & C.* 193. In fine, he may avail himself of any evidence which may tend to show good faith or probable grounds for his belief, leaving the question to be determined, upon all the evidence, whether his conduct was *bona fide*—whether, at the

time he made the representation, he honestly believed that his representation was true.

The Massachusetts cases cited to support the instruction certified to the court admit the distinction I have referred to. In *Tryon* v. *Whitmarsh*, 1 *Metc.* 1, which was an action for false and fraudulent representations as to the credit of third persons, whereby the plaintiffs were induced to give them credit, a verdict for the plaintiffs was set aside for the reason that the judge should have instructed the jury that the defendant would not be liable if they were of opinion, from the evidence, that he gave an honest opinion, and believed that the persons recommended were trustworthy. In *Hazard* v. *Irwin*, 18 *Pick.* 96, the false representation was by a vendor, on the sale of an engine, with respect to its condition. He made the representation as of his own knowledge. The condition of the engine was a fact the vendor could easily have ascertained. The court, (Shaw, C. J.,) cited Haycraft *v.* Creasy, and distinguished it from the case in hand in that the subject matter of the representation was " one of fact in respect to which a person can have precise and accurate knowledge, and in respect to which, if he speaks of his own knowledge, and has no such knowledge, his affirmation is essentially false." In *Page* v. *Bent*, 2 *Metc.* 371, the false representation was in relation to the nature and amount of the assets assigned by the defendants. The condition and amount of the assets were peculiarly within the knowledge of the defendants. The court, (Shaw, C. J.,) said, " The principle is well settled that if a person make a representation of a fact as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is untrue,   *   *   *   it is a fraud and deceit for which the party making it is responsible. *   *   *   But in a matter of opinion, judgment or estimate, if he states a thing of his own knowledge, if he in fact believes it, and it is not intended to deceive, it is not a fraud, although the matter misstated is not true. The reason is that it is apparent from the subject matter that what is thus stated as knowledge must be considered and understood by the party to

Cowley v. Smyth.

whom it is addressed as an expression of strong belief only, because it is a subject of which knowledge, in its strict sense, cannot be had." In *Stone* v. *Denny*, 4 *Metc.* 151, the action was on a false representation on a sale of property made by the defendant, on a schedule exhibited which he represented as correct of his own knowledge. Dewey, J., in his opinion, referred to the Massachusetts cases and said, " From an examination of those cases and others bearing upon the question, I apprehend, however, that it will be found that no real change has been sanctioned in the great and leading principles of law applicable to cases of deceit, and that now, as formerly, to charge a party in damages for a false representation,    *    *    * it must appear that it was made with a fraudulent intent, or was a wilful falsehood." The illustration he gives is " of one asserting as of his own knowledge· a matter of which he has no knowledge, nor any sufficient ground for making the assertion." The subsequent observation of the learned judge, " that if one positively affirms a fact as of his own knowledge, and his affirmation is false, his representation is deemed fraudulent," is unobjectionable as applied to the facts of that case, where, because of the subject matter of the representation, the affirmation of knowledge was to be taken in its strict sense, and not as only a strong expression of belief.

The principle adjudged in Haycraft v. Creasy is applicable to actions against directors for false and fraudulent representations concerning the financial condition of the institutions in their charge. It was so applied in Taylor v. Ashton, which has become a leading case in the English law. The affairs of such an institution must necessarily be entrusted to executive officers and subordinate agents, and the directors generally cannot know, and have not the requisite ability to learn, by their own efforts, the exact condition of the affairs of the company, and it has been found that no vigilance on their part has been adequate to protect these institutions from frauds and peculations covered up and concealed by false entries and false reports. A representation by a director that the institution is in a sound and solvent condition within his own knowledge

possesses the legal characteristics of the like representation as to the credit and financial ability of a third person, such as was before the court in Haycraft *v.* Creasy, and it must be subject to the same legal rule.

The facts on which this case was founded were these : the plaintiff was a depositor in the bank. About the 1st of August, 1878, there was a rumor in circulation affecting the condition of the bank. The defendant was one of the directors of the bank, and a member of the finance committee. The plaintiff, having heard the rumor, went to the defendant and told him of the rumor in circulation, and that he was a depositor and did not want to lose his money, and proposed to take it out. The defendant said, " It can't be so, unknown to me and Mr. Monks. We are on the finance committee. There can be nothing wrong with that bank unknown to me and Mr. Monks. Don't believe any of these false reports; believe me; take my word for it. The bank is good, paying six per cent.—the best in the state. If all that is in Jersey tells you the bank is bad, don't believe it till I tell you." He also said " there was a surplus of over $6000 after the dividends were paid." The bank continued to pay all demands down to November 1st, 1878, when it went into the hands of a receiver. It was insolvent on the 1st of August, 1878, when these representations were alleged to have been made.

The defendant was a director of the bank from June 8th, 1869, until its suspension in November, 1878, and a member of the finance committee from November 19th, 1877. The duties of the finance committee were to attend to all applications for loans, and to look after the investing of the company's funds. The general charge and government of the bank devolved upon the executive committee, of which the defendant was not a member. There was no evidence that the defendant had actual knowledge of the condition of the bank. On the contrary, the proof was that at a regular meeting of the directors, on the 31st of May, 1877, the president read his statements, showing a surplus of $6000, and a motion

was adopted declaring a dividend of six per cent. The next regular meeting was on the 19th of November, 1877. It appears by the minutes that a statement of the assets and liabilities was read in detail, and a dividend of six per cent. per annum was declared for the six months ending October 31st, 1877. On May 30th, 1878, another meeting of directors was held, at which the minutes of the last meeting were read and approved, and a dividend at the rate of six per cent. for the six months ending April, 1878, was declared. All these dividends were credited, and were paid to such of the depositors as presented their books. The defendant was present at each of these meetings of the directors.

On these facts the defendant was not entitled to the nonsuit he asked for; but he was entitled to a different instruction to the jury. The case cannot be distinguished from Haycraft v. Creasy and Taylor v. Ashton, and it should have been left to the jury to say whether, upon the evidence, the defendant made the representations with a fraudulent purpose to deceive, or whether he made them in good faith and in the honest belief that they were true.

There will be a certificate accordingly.