**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0274-17T2

REED S. KEAN,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

INTOWN INVESTMENT GROUP, LLC, [1]
DAVID BLACK, CATHLEEN BLACK,
and VICINITY MEDIA GROUP, INC.,

      Defendants-Appellants/
      Cross-Respondents.

_____

Argued November 8, 2018 – Decided December 7, 2018

Before Judges Koblitz, Ostrer, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2733-15.

Mitchell J. Decter argued the cause for appellants/cross-respondents (Ferro Labella & Zucker

---

[1] InTown Investment Group, LLC was dissolved prior to this litigation and is not a party to the appeal.

LLC, attorneys; Mitchell J. Decter, of counsel and on the briefs).

Jordan D. Weinreich argued the cause for respondent/cross-appellant (Sherman Wells Sylvester & Stamelman LLP, attorneys; Julian W. Wells and Jordan D. Weinreich, of counsel; Matthew F. Chakmakian, on the brief).

PER CURIAM

Defendants David Black,[2] Cathleen Black, and Vicinity Media Group, Inc. (VMG) appeal from an August 8, 2017 judgment entered against them, jointly and severally, in favor of plaintiff in the amount of $112,500.[3] Plaintiff cross-appeals from the trial court's denial of his claim that defendants violated the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 to -83 (NJUSL).

We affirm in part and remand in part. We affirm as to the entry of the judgment, inclusive of plaintiff's $100,000 investment, and the trial court's denial of plaintiff's claim under the NJUSL. We remand for the trial court to

---

[2] We refer to David Black interchangeably as David Black and Black. We refer to his wife as Cathleen Black throughout this opinion.

[3] The trial court entered judgment in the amount of $112,500, finding $100,000 represented plaintiff's initial investment for the project known as InTown and Around and $12,500 represented a subsequent investment by plaintiff to Black for a different business venture known as Best of Essex. Defendants' appeal is limited to the $100,000 portion of the judgment.

provide findings of fact and conclusions of law regarding the imposition of joint and several liability against Black, Cathleen Black, and VMG.

The relevant facts are straightforward. Black had an idea to develop a mobile application to link local residents with local businesses within a particular community. The idea involved development of a new media platform, capitalizing on Black's existing business connections in the print magazine field. Black and his wife had experience marketing local businesses to area residents through their company, VMG.[4] Black saw an opportunity to use his business expertise and VMG's publishing skills to create a product tailored to the digital age.

To make his vision a reality, Black sought investors for his idea. Plaintiff had no background in software development, but liked Black's idea and decided to meet with Black. Black asked plaintiff to invest $100,000 and gave plaintiff a spreadsheet with financial information.[5] The spreadsheet contained growth projections for the venture over a five-year period. The projections were prepared by Black with the assistance of the owner of a landscaping company

---

[4] VMG published several print magazines touting local businesses.

[5] During depositions, the parties referred to the spreadsheet as the "prospectus."

3

who advertised in VMG's print publications. Black did not consult any financial advisors or other professionals in preparing the spreadsheet.

Black sent plaintiff emails confirming the investment and describing each investors' role in the application to be known as "InTownandAround.com" (InTown). In December 2013, the parties signed an operating agreement for InTown. In accordance with the operating agreement, spreadsheet, and Black's emails, plaintiff was the only investor contributing cash for InTown. In August 2013, plaintiff agreed to invest $100,000, payable in several installments, for a 21.8 percent share of InTown. According to the documents, another investor, Eric Lanel, was to provide an in-kind contribution toward the project, offering his advertising and marketing expertise, in return for a 21.8 percent share of InTown. The Blacks also would provide in-kind contributions for a collective 56.4 percent share of InTown. Black's contributions included hiring and managing staff, using VMG's offices, and creating the content for the mobile application. Cathleen Black, for her share of InTown, would provide contributions in the form of marketing, bookkeeping, paying invoices, and writing checks.

Within ten months of plaintiff paying the first investment installment, InTown failed. According to Black, due to advances in mobile technology, the

4

platform was obsolete. Ultimately, InTown dissolved. Plaintiff then filed a lawsuit against defendants alleging fraud, fraud in the inducement, breach of contract, breach of fiduciary duty, conversion, unjust enrichment, and violation of the NJUSL.

The matter was tried before a judge without a jury. The judge heard testimony on July 11, July 12, and July 28, 2017. Eric Lanel, plaintiff, and Black testified. Cathleen Black, who was present in the courtroom during the trial, did not testify.

The judge summarized the testimony in an oral opinion. Overall, the judge found the testimony provided by plaintiff and Lanel to be more credible than the testimony provided by Black. Based on the testimony, the judge found Black invoiced InTown for the in-kind contributions he was obligated to perform. The judge also concluded plaintiff was not aware of the monthly management fee InTown paid to VMG. The judge determined the operating agreement afforded plaintiff "financial oversight" of InTown, which Lanel believed included access to accounting and banking information and the ability to challenge InTown's expenditure of money.

While the judge found plaintiff unable to specifically recall receipt of the emails and spreadsheet from Black, plaintiff did not deny reviewing the

5

documents. The judge determined plaintiff opened InTown's bank account, using the same bank where plaintiff had his personal account, to facilitate the payment of his investment installments. Plaintiff claimed he was unaware InTown was making payments to VMG because the Blacks, through VMG, were supposed to provide in-kind services for the start-up of InTown. While plaintiff attended several meetings regarding InTown, plaintiff testified he never discussed where his investment money was being spent. Plaintiff characterized himself as a "passive investor" of InTown despite being granted "financial oversight" of InTown, opening InTown's bank account, and attending numerous meetings to discuss InTown.

The judge found Black's testimony "inconsistent," "unbelievable," and "rambling and . . . unresponsive to the questions being asked." In reviewing the financial projections in the spreadsheet sent to plaintiff, Black was asked about several line items. The judge found Black could not identify the services a "pod account manager" would perform despite listing a pod account manager in the spreadsheet. Nor was Black able to explain the purpose of the legal fees listed in the spreadsheet or explain how he arrived at the dollar amount for that line item. In arriving at the projected gross profits for InTown, Black told the judge the figures were "illustrative" and "potential based on the numbers." Black

based his "numbers" on internet research but did not retain his search results. Black admitted he did not seek the advice of investment bankers or professional financial advisors in creating the spreadsheet. When Black was asked whether the information in the spreadsheet provided to plaintiff was realistic, Black responded the information was "totally speculative."

Responding to questions about the language in InTown's operating agreement, Black conceded the document was "unclear" regarding many terms, including the terms "staff" and "office" used to describe his in-kind contributions toward InTown.

Also troubling to the judge was Black's lack of knowledge or information regarding the invoices VMG submitted to InTown. According to Black, Cathleen Black prepared invoices on behalf of VMG and submitted them to InTown for payment. Cathleen Black then issued payment for VMG's invoices from InTown's bank account. Black was unable to explain the discrepancies between the amounts invoiced by VMG and the line item amounts in the spreadsheet. The judge concluded, "Black's answers simply did not make sense." In addition, Black told the judge any advertising revenue generated by InTown was "deposited into VMG's accounts" and "none of the [advertising] revenue was put back into InTown." Black also admitted VMG's revenue had

A-0274-17T2

declined approximately forty percent between 2008 and 2013 when InTown was launched.

Based on the testimony, the judge found plaintiff met his burden of proof on his fraud claim as the "goals and the prospectus of InTown were totally speculative." The judge found:

> Mr. Black had no basis for the financial projections for the venture. . . . Mr. Black came up with [the gross profit] figures on his own without consultation with financial advisors or investment bankers. Mr. Black had no basis or reason to expect such growth from InTown. In addition, at no point did Mr. Black disclose the extent to which he planned VMG's involvement in the venture. . . . Mr. Black was to make an in-kind contribution to staff, office[,] and infrastructure development and sales. Instead, Mr. Black, through VMG, invoiced InTown for the in-kind contribution he was obligated to perform. In total, VMG invoiced InTown for nearly $75,000 in services rendered. In addition, the cash infusion of VMG came at a time when revenue had declined by [forty] percent over a five-year period.

The judge concluded plaintiff was entitled to the return of his $100,000 investment for InTown.

Plaintiff submitted a form of judgment pursuant to R. 4:42-1(c) reflecting the judge's decision. According to the language in the proposed judgment, the judge found against David Black, Cathleen Black, and VMG "jointly and severally, in the amount of $112,500." While the judge made findings that Black

8

committed fraud, he made no such findings as to Cathleen Black or VMG in his decision.

The judge also considered and rejected plaintiff's NJUSL claim. On the issue of plaintiff's status as an investor to invoke the NJUSL, the judge found:

> Plaintiff is trying to argue essentially both sides of the same coin. Plaintiff asserts that the expectation of all parties was that plaintiff was to be a passive investor; however, plaintiff then states that defendant should be estopped from arguing that plaintiff is a passive investor and the [c]ourt should treat [plaintiff] as an active investor for the purpose of designated exception [ ] N.J.S.A. 49:3-50(a)(12)(b)(9). Plaintiff has presented conflicting testimony as to whether [he] was or was not a passive investor. Accordingly, plaintiff has not met [his] burden in establishing a claim under New Jersey's Uniform Security Law.

On appeal, defendants argue the judge erred in finding plaintiff's $100,000 cash investment was procured through fraud and imposing joint and several liability against Cathleen Black and VMG. On the cross-appeal, plaintiff challenges the judge's denial of his claim under the NJUSL.

Our review of a trial court's factual findings is limited to whether the findings are supported by sufficient credible evidence. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483–84 (1974). A trial judge's evaluation of credibility, based on his or her opportunity to see and hear witnesses, should be honored unless manifestly against the weight of the evidence. Valdez v. Tri-

A-0274-17T2

State Furniture, 374 N.J. Super. 223, 232 (App. Div. 2005). However, a trial court's legal conclusions are reviewed de novo. See, e.g., Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). A trial court's application of the law to the facts is also reviewed de novo. State v. Harris, 181 N.J. 391, 416 (2004).

In reviewing a common-law fraud claim, a plaintiff is required to prove: (1) a material misrepresentation by the defendant of a presently existing fact or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely on the statement; (4) reasonable reliance by the plaintiff; and (5) resulting damages to the plaintiff. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). A plaintiff must prove a fraud claim through clear and convincing evidence. Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989).

Generally, "the alleged fraudulent representation must relate to some past or presently existing fact and cannot ordinarily be predicated upon matters in futuro." Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 380 (App. Div. 1960) (alterations omitted). There is an exception to this rule in the case of a false representation of an existing intention. Ibid. "A promise to pay in the future is fraudulent if there is no present intent ever to do so." Van Dam

A-0274-17T2

Egg Co. v. Allendale Farms, Inc., 199 N.J. Super. 452, 457 (App. Div. 1985).

As we held in Stochastic Decisions, fraudulent intention

> may be derived from circumstantial evidence such as: the recklessness or implausibility of the statement in light of later events; showing that the promisor's intentions were dependent on contingencies known only to the promisor; or simply from evidence indicating that the promisor would not or could not fulfill the promise.
>
> [Stochastic Decisions, 236 N.J. Super. at 396.]

Black's promises regarding InTown were not simply puffery or opinions as to future events. Black made statements to plaintiff to obtain a $100,000 cash investment for InTown, knowing the statements were made without financial support, and the projections were "totally speculative." Black also committed fraud by failing to disclose his intention to use money from InTown for his own financially declining company, VMG, when Black expressly agreed to contribute in-kind services through VMG in exchange for his percentage share of InTown.

Having reviewed the record, plaintiff met his burden of proving fraud under the circumstances. Black made false misrepresentations about InTown that were without any financial basis or other support, and dependent on information known only to Black; specifically, his intention to bill InTown for

11

VMG's services that were supposed to be included as Black's in-kind contributions toward InTown in lieu of a cash contribution.

Black also knew plaintiff would rely on the information in the spreadsheet. Without the spreadsheet, there was no reason for plaintiff to invest in InTown. Plaintiff testified he agreed to the $100,000 investment based on the materials plaintiff received from Black, including the spreadsheet. Plaintiff reasonably relied on Black's spreadsheet because plaintiff had no experience in the development of mobile applications. Black's representations regarding InTown were made in bad faith with the intent to induce plaintiff to make a large cash investment.

We next consider defendants' challenge to the entry of the final judgment jointly and severally against all defendants. Rule 1:7-4 requires a trial court find "the facts and state its conclusions of law thereon . . . on every . . . written order that is appealable as of right[.]" The failure of a trial court to meet the requirements of the rule "constitutes a disservice to the litigants, the attorneys and the appellate court." Curtis v. Finneran, 83 N.J. 563, 569–70 (1980) (quoting Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)). The failure to advance reasons in support of a judicial decision

results in our speculating as to the trial court's thinking. See Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Here, the judge failed to make the required findings of fact and state his legal reasons for imposing joint and several liability against all defendants. The judge determined David Black committed fraud. However, we are unable to discern from the record whether the fraud findings extended to Cathleen Black and VMG. Thus, we are constrained to remand the matter to the trial court to explain the imposition of joint and several liability on David Black, Cathleen Black, and VMG. We take no position on the court's determination of this issue on remand.

We next examine plaintiff's cross-appeal regarding the judge's denial of his NJUSL claims. Having reviewed the record, we are satisfied that to be an "investment contract" within the definition of a security under the NJUSL, an investor must be a "passive investor." See S.E.C. v. Howey, 328 U.S. 293, 298 (1946) (applying federal securities law).[6] A "passive investor" is one who derives profits "solely through the efforts of [others]." Ibid. An investor who

---

[6] Under the NJUSL, courts have to power to review federal law for guidance on the sale of securities. See N.J.S.A. 49:3-75.

has legal rights and enjoys certain powers is not a passive investor. See Goodwin v. Elkins & Co., 730 F.2d 99, 107 (3d Cir. 1984).

The judge found plaintiff "presented conflicting testimony as to whether [he] was or was not a passive investor." Plaintiff admitted he had certain rights such as opening the bank account for InTown, an ability to access InTown's bank statements and transactions, attending meetings with InTown's investors, appointment as secretary of InTown, and "financial oversight" over InTown. Whether or not plaintiff chose to exercise these rights with respect to InTown does not equate with his being a "passive investor." Under the circumstances, we are satisfied plaintiff was not a passive investor entitled to pursue a claim under the NJUSL.

We affirm as to the amount of the final judgment entered and the denial of plaintiff's claims under the NJUSL. We remand to the court to explain the basis for the entry of the judgment against David Black, Cathleen Black, and VMG jointly and severally. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0274-17T2