JOSEPH DUFFY, RESPONDENT, v. WILLIAM C. BATES, APPELLANT.

Submitted July 9, 1917—Decided March 4, 1918.

1. There was testimony from which a jury might infer that the defendant, the superior officer and fellow servant of the plaintiff, directed the latter to enter a loaded elevator for the purpose of being taken to a lower floor to assist in taking off the load; that the elevator was controlled by an electric current and a brake; that the defendant, operating the elevator, started its descent by releasing the brake without applying any current, which some of the evidence showed could be used to retard the downward movement, and that, the brake failing to hold, no current was applied to control the elevator and it fell to the bottom of the shaft whereby the plaintiff was injured. *Held*, that the neglect to properly operate the elevator was a misfeasance and a breach of a duty which defendant owed to plaintiff, and that under *O'Brien v. Traynor*, 69 N. J. L. 239, the action of plaintiff against his fellow servant to recover for his injuries would lie, and a refusal to direct for defendant was not error.

2. Whether defendant acted as a reasonably prudent person would under all the circumstances was also a jury question.
3. Where the injury which plaintiff suffered was a broken leg, which after treatment was supposed to be sufficiently cured to permit use for walking, and while being so used in a careful and usual manner, no other intervening cause appearing, it again broke in the same place, a jury might infer that the original injury was the proximate cause of the second, and, therefore, evidence as to the time the plaintiff lost as a result of the second breaking and cost of medical attendance was competent.

On appeal from the Union County Circuit Court.

For the appellant, *Lindabury, Depue & Faulks.*

For the respondent, *John B. Walsh.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff was the servant of the Madison Ice Company, of which the defendant, William C. Bates, was the president and general manager, and this action was brought against him as a fellow servant, the question submitted to the jury being whether the defendant was guilty of negligence in operating an elevator. The plaintiff proved that after helping load ice on the elevator, the defendant, who was plaintiff's superior officer and operating the elevator, directed plaintiff to get on the elevator to ride on it to a lower floor in order to assist in unloading the ice; that the defendant then lowered the elevator about seven feet when it was stopped to fix a piece of canvas, which was done by the plaintiff and another employe; that after this was done the defendant, instead of applying the electric current to control the movement of the elevator, as plaintiff testified he should do, he pulled the brake rope which caused the elevator to fall and injure the plaintiff. The defendant's case was substantially that the proper method of operating the elevator was not to apply the current but to control the descent of the elevator by the brake, releasing it enough to permit the weight of the elevator to cause its descent; that the application of the current of electricity was not required

to control the descent of the elevator, and if applied would have caused the elevator to ascend; that the cause of the accident was a defect in the machinery regulating the operation of the brake, which suddenly occurred, and over which the defendant had no control, and which he was not bound to inspect, not being responsible for its sufficiency. As one of the witnesses produced by the defendant testified that if, while operating the elevator, the brake rope gave way, it could be let down with the electric power, his testimony being, "As long as all the rest of the machinery was all right I would let it down with power," there was evidence, if the jury believed it, which would justify it in finding that the elevator could be lowered and its descent controlled by the application of the electric current if the brakes failed to act, and that it was not applied.

The plaintiff had a verdict and the first point argued in support of the defendant's appeal is that the trial court erred in refusing to direct a verdict upon the ground that the action was brought against a fellow servant, and all that was required of the defendant was the exercise of such care as a reasonably prudent man would use under the circumstances and that the proofs showed that such care was manifested, the only negligence alleged against the defendant being that he did not use the current in connection with the brake. We think that a jury might infer from the evidence that by a moderate use of the electric current, not sufficient to entirely overcome the gravity of a loaded car, the descent of the car could be controlled in case the brake failed, and, as claimed by the plaintiff, the application of the current, if the brake failed, was necessary to the proper use of the elevator.

The rule relating to the liability of a fellow servant for injuries resulting to his co-employe from his negligence was stated by Chancellor Magie, speaking for this court, in *O'Brien* v. *Traynor,* 69 *N. J. L.* 239, as follows: "The fact of a common employment does not of itself prevent an injured fellow servant maintaining an action against his fellow servant for an injury inflicted by the negligence of the latter." In the present case we have testimony from which a

jury might infer negligence by the defendant, a fellow servant, in not properly operating an elevator upon which plaintiff was directed to ride by defendant, his superior officer, who knew, as the jury might find, that by applying the electric current when the brake failed, the elevator would not fall, but its downward course so regulated as to prevent injury to plaintiff, and in neglecting this duty he was guilty of misfeasance. Whether the defendant acted as a prudent man would, in not using the electric current to regulate the elevator, or not applying it when he found the brake failed, was a jury question. *Connelly* v. *Trenton Passenger Railroad Co.,* 56 *N. J. L.* 700; *Weston* v. *Pennsylvania Railroad Co.,* 74 *Id.* 484.

It appeared in the defendant's case that, after the accident, it was discovered a portion of the machinery had become displaced, and it is argued by the defendant that even if he had undertaken to use the current properly, it would not have been effective because of the disarrangement of some of the machinery discovered after the accident, but against this is the fact that the accident itself might have produced the disarrangement. We are, therefore, of opinion that the motion to direct a verdict was properly refused, and that under the evidence it was a jury question whether the defendant had carefully managed the elevator.

After the accident the plaintiff was sent to a hospital where the fracture was treated for seven weeks, from there he went to his home and continued under medical treatment until about the middle of December following the accident, when he supposed he was sufficiently recovered to use his leg in performing light work, and returned to the service of the ice company, in which he performed only that character of service. At the expiration of two weeks he left the service and on his way home, in stepping from the surface of the street to the sidewalk, the leg broke in the same place; it, as he testified, "simply crushed under him," the result being that he was compelled to return to the hospital and undergo another operation. The plaintiff was allowed, over defendant's objection, to prove the length of time he remained at

the hospital and the cost he was put to because of this second breaking of his leg. The defendant urges that this was error because the original injury, if caused by defendant's negligence, was not the proximate cause of the second injury. There is evidence in the record from which a jury might infer that the second fracture was the result of the weakened condition of the joint caused by the original injury, without the aid of an intervening cause, other than its use in walking in a customary manner, which alone would not have caused the second injury. We do not think that such use was an intervening cause so distinct from the original injury as to relieve the prior injury from being the proximate cause of the second. If there was no other culpable and efficient agency intervening between the defendant's negligence and the second fracture, then the negligence of the defendant was the proximate cause of the natural sequence of the first injury. *Smith* v. *Public Service Corp.,* 78 *N. J. L.* 478. Whether under all the circumstances in the present case the second fracture was a consequence of the first without a culpable and efficient intervening agency, was a jury question, and relevant testimony concerning the damages plaintiff suffered. if the jury should find that defendant's negligence was the proximate cause, was competent.

This case differs from *Raymond* v. *Haverhill,* 168 *Mass.* 382; 47 *N. E. Rep.* 101, where the second injury was due to plaintiff's stepping from a chair to a settee while her ankle was in a weakened condition, caused by defendant's negligence, because what she attempted to do was unusual, and as the court said, "She was not acting from any necessity caused by her previous accident but acting independently and voluntarily."

It also differs from *Snow* v. *New York and New Haven Railroad Co.,* 185 *Mass.* 321; 70 *N. E. Rep.* 205, where plaintiff because of previous injuries was subject to attacks of dizziness and while standing on a chair in a pantry sink, examining a leaking pipe, was attacked by dizziness and fell, breaking her wrist. Proof of damages resulting from this fall was excluded, and the ruling sustained upon the ground

that getting into the sink was an independent and voluntary act on her part.

Assuming these cases to be correctly decided, there was in each an efficient intervening cause, not the result of any necessity caused by the prior accident, while in the present case, if the plaintiff was ever to walk he was necessarily required to use an ankle weakened and insecure because of his prior injury, and if, without negligence on his part in such use, the ankle gave way as a consequence of the prior injury, that injury a jury might infer was the proximate cause of the second. We think the evidence was competent.

The other ground of appeal is that the trial court erroneously permitted the plaintiff to ask Guy Bates, one of the witnesses called by the defendant, whether he was not a stockholder and officer of the' ice company, to which he replied that he was. This question was objected to upon the ground that it was "irrelevant because this action is not against the ice company." As the ice company was not a party to the action and not affected by its result, the evidence even if improperly admitted, because irrelevant, was not harmful to the defendant.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, WHITE, WILLIAMS, TAYLOR, GARDNER, JJ.   13.

*For reversal*—None.