THE STATE EX REL. MOUNTAIN GROVE CREAMERY, ICE & ELECTRIC COMPANY v. ARGUS COX ET AL., Judges of Springfield Court of Appeals.

Court en Banc, August 6, 1926.

**1. PRINCIPAL AND AGENT: Created by Contract.** The relation of principal and agent has its foundation in contract; it is created and continued through mutual agreement, and either party has it within his power to terminate it at will; and if the agent repudiates his agency, but wrongfully remains in possession of and operates the principal's plant, he does not do so as agent, but as some sort of a **trustee ex maleficio.**

**2. ————: Agent: Respondeat Superior.** It is only when the principal or master has the right to control and command that the rule of **respondeat superior** applies. Where an employee of a corporation resigns his employment and repudiates his agency, but continues to remain in possession of a plant which by final judgment is adjudged to be the property of the corporation, the corporation is not liable in damages to his laborer for personal injuries received while he was operating the plant. Having renounced his agency, he was not operating the plant within the scope of his agency, but was acting for himself; and the fact that he appealed from the judgment and gave a bond which permitted him to remain in possession pending the appeal, did not place him under the control and command of the corporation, or restore his relationship as agent of the corporation.

**3. ————: Ownership of Plant: Appeal: Possession: Profits.** The manager of a creamery corporation, having, at the direction of the corpo-

ration, tried to lease for it another plant, but failing in doing so, leased it in his own name and proceeded to operate it, retaining his position as manager of the corporation and endeavoring to induce its owners to organize a separate corporation to buy the leased plant, and when they declined to do so he resigned his position and assumed possession and control of the plant in his own right, and thereafter the corporation brought suit to establish its ownership of the plant and obtained judgment, which upon his appeal was affirmed. He thereupon gave bond which permitted him to remain in possession during the pendency of the appeal, and continued to operate the plant, and while so operating it a laborer employed by him was negligently injured, and the question for decision is whether the corporation is liable in damages to such injured employee. **Held,** first, that the fact that the corporation ultimately received all the profits made by the former manager during the time he was operating the plant is without significance on the question of his agency, for having finally lost the suit he was bound to account for the profits under the terms of the indemnity bond; and, **second,** that he did not operate the plant as the corporation's agent, but had renounced his agency, and the corporation is not liable in damages for the personal injuries to his employee.

Corpus Juris-Cyc. References: **Agency,** 2 C. J., Section 1, p. 419, n. 6; Section 147, p. 525, n. 5; Section 171, p. 543, n. 83; Section 196, p. 554, n. 11 New. **Courts,** 15 C. J., Section 518, p. 1092, n. 63. **Master and Servant,** 39 C. J., Section 1467, p. 1279, n. 38.

*Certiorari.*

RECORD QUASHED.

*V. O. Coltrane* for relator.

(1) The decision of the Court of Appeals under the facts set out by that court in its opinion is in direct conflict with the controlling decisions of this court. Hillsdorf v. St. Louis, 45 Mo. 98; Mound City Paint Co. v. Conlon, 92 Mo. 221; Whiteaker v. Railroad, 252 Mo. 438; Smothers v. Welch & Co., 274 S. W. 678; Kiser v. Suppe, 133 Mo. App. 19. In such cases the responsibility of principals for the acts of others is based upon their power of control, and where the agent or servant is pursuing his own ends for his own purposes the rule of *respondeat superior* does not apply. (2) The decision of the Court of Appeals is also in direct conflict with Cousins v. Railroad Co., 66 Mo. 572; Wolf v. Terminal Association, 282 Mo. 559; Garretzen v. Duenckel, 50 Mo. 104; Guthrie v. Holmes, 272 Mo. 215. In such cases where the servant or agent is disregarding the object for which he was employed and was acting without the scope of his employment, the master or principal is not liable.

RAGLAND, J.—Relator seeks to have quashed, on the ground that they are in conflict with the decisions of this court, the opinion and judgment of the Springfield Court of Appeals in the case of Pleasant A. Vaughn v. Mountain Grove Creamery, Ice & Electric

Company and L. N. Moore, reported in 275 S. W. 592. That suit
was for personal injury. The plaintiff therein alleged that on the
13th day of June, 1918, he was in the employ of the defendants;
that pursuant to such employment it was his duty to take care of
the boiler room of their creamery plant and to perform such other
work in and around said plant as he might be called upon to do;
that on said date, while engaged in the discharge of his said duties,
he received certain injuries; and that those injuries were proxi-
mately caused by the negligence of defendants in failing to furnish
him with reasonably safe appliances and a reasonably safe place for
the performance of his work. In the trial court plaintiff was given
judgment against both defendants and it was affirmed on appeal.
On the trial of the case the principal issue as between plaintiff and
defendant Mountain Grove Creamery, Ice & Electric Company
(relator here) was whether the latter was operating the creamery
plant at the time plaintiff received his injury. The rulings of the
Court of Appeals on the facts adduced on that issue are made the
basis of this proceeding.

Prior to the institution of the personal injury suit there had been
litigation between Mountain Grove Creamery, Ice & Electric Com-
pany and Moore involving as between them the ownership and right
of possession of the creamery plant. Phases of that litigation had
been before the Court of Appeals and opinions had been written.
On the trial of the Vaughn suit those opinions, reported in 197 S. W.
916, and 202 S. W. 1054, were read in evidence, and they were
incorporated by reference, as statements in part of the facts, in the
opinion of the Court of Appeals attacked in this proceeding. The
facts must therefore be gathered from all three of the opinions. (In
the opinion under review the defendant Mountain Grove Creamery,
Ice & Electric Company, relator herein, is treated as identical with
Mountain Grove Creamery, Poultry & Produce Company, one of
the parties to the litigation heretofore referred to).

We quote from the opinion in Mountain Grove Creamery, Poultry
& Produce Company v. Willow Springs Creamery Company, 202
S. W. l. c. 1054, 1055, as follows:

"On November 10, 1914, defendant Moore was secretary of plain-
tiff, and resided at Mountain Grove. On that date the plaintiff at
a meeting of its board of directors directed that Moore see what
could be done towards leasing the Green Hills Creamery Company
plant at Willow Springs. Moore kept the minutes of this meeting
and signed them as secretary, and at this time and afterwards
throughout 1915 and 1916 was in the employ of plaintiff, drawing
a stated monthly salary. Moore made two or three trips from Moun-
tain Grove to Willow Springs and other places to see about securing
the lease, his expense being paid by plaintiff; but the Green Hills

Creamery Company would not lease to plaintiff, but was willing to lease to Moore. This company had lost about $8000 in the creamery business, and had its plant mortgaged for $5000, and the due date of the mortgage debt was approaching. Moore reported back to plaintiff that he could not secure the lease to it, and he was thereupon instructed to use his own judgment about how he secured the lease. Finally Moore succeeded in obtaining a temporary lease direct to himself, dated December 17, 1914, expiring April 20, 1915. Shortly after obtaining this lease Moore moved from Mountain Grove to Willow Springs, and took charge of the creamery plant of the Green Hills Creamery Company at Willow Springs. Moore continued to draw his salary from plaintiff, and it was agreed that if the leased plant made a certain amount, he was to have a certain bonus above the stated salary. Plaintiff advanced money to properly equip the Willow Springs plant. On March 12, 1915, Moore secured a lease from the Green Hills Creamery Company to himself beginning on April 20, 1915, and running for five years.

"It seems that there was a kind of tentative understanding between Moore and the directors of plaintiff that they would some time organize the leased plant at Willow Springs into a separate corporation, but no definite terms or time were ever agreed upon. Moore operated the leased plant under the name of 'Willow Springs Creamery Company, L. N. Moore, Manager.' In 1915 the plant lost $490, but in 1916 made about $9000. Some time in 1916 Moore resigned as secretary and director of plaintiff, and sold his stock therein, but continued to operate, as manager, the Willow Springs plant, and plaintiff continued to pay his salary. On March 26, 1915, a few days after the five-year lease was obtained, plaintiff furnished $4200 for the purpose of financing the Willow Springs plant. This was used in overhauling and replenishing the plant with new and necessary fixtures and machinery. . . . It appears that the plant at Willow Springs was operated as a kind of semi-independent concern, as separate books, etc., were kept, and on the surface it appeared to be a real competitor with the Mountain Grove plant; but the Willow Springs plant was in fact managed and directed by Moore, who was in the employ and under the direction of plaintiff. Moore expected the plant at Willow Springs to be incorporated, and he to have stock therein, but the necessary steps to incorporate were not taken, and the matter passed, with occasional mention, until December, 1916, when Moore had some difference with the manager of plaintiff at Mountain Grove. After this difference Moore became insistent that the new corporation be created. . . . In January, 1917, Moore, with the profits of the Willow Springs plant, discharged all obligations incurred on behalf of the Willow Springs plant, and proceeded

to organize a new and separate corporation under the name of 'Willow Springs Creamery Company.'"

And the following from Willow Springs Creamery Company v. Mountain Grove Creamery, Poultry & Produce Company, 197 S. W. l. c. 916, 917:

"This is an original proceeding for a writ of prohibition against the defendants Mountain Grove Creamery Company and Hon. E. P. Dorris, judge of the Circuit Court of Howell County, Missouri, to restrain the enforcement of an order of said court, made in a cause there pending, wherein the said Mountain Grove Creamery Company was plaintiff and L. N. Moore and others, acting under the name of the Willow Springs Creamery Company, were defendants. Said order was made on July 31, 1917, at the July term of said court, and is as follows: 'The order of the court, heretofore entered, that the Mountain Grove Creamery Company be permitted to inspect the Willow Springs plant is hereby re-affirmed, and the Willow Springs Creamery Company and L. N. Moore are to furnish a monthly written statement to the Mountain Grove Creamery Company, showing receipts, expenses, and disbursements.'

"The facts leading up to the said order are these: L. N. Moore, who had been conducting a creamery business at Willow Springs, on leased premises, with all the necessary apparatus, machinery, and fixtures, took steps to form a corporation in which he was chief stockholder, to be known as the Willow Springs Creamery Company. The capital stock of the proposed corporation included the fixtures, machinery, etc., of the plant then being managed and operated by said Moore. Thereupon the Mountain Grove Creamery Company brought suit by injunction in the Howell County Circuit Court, setting up that all said property belonged to it, and that the plant at Willow Springs was merely a branch of its business managed by Moore as its agent, and asking that Moore and his associates be enjoined from taking possession of, or converting to their own use or to the use of a corporation about to be formed, the lease on the property known as the Green Hills Creamery Plant, together with the equipment, machinery, and other personal property thereto belonging. It seems that the real controversy in that case was over the ownership of the creamery property at Willow Springs.

"This injunction suit was tried at the April term, 1917, of the Howell County Circuit, on April 6th, resulting in a judgment for the plaintiff, and the temporary injunction was made perpetual, by which Moore and his associates and the incipient corporation were restrained from taking possession of or interfering with said property. The then defendant Moore, his associates, and the corporation then in the making at once took steps for an appeal to this court, and such appeal was granted on April 7, 1917, and leave given to

file an appeal bond in the sum of $200 within ten days. The effect of the judgment and restraining order was to give the then plaintiff, defendant here, the right to immediate possession to this property; but an understanding was reached between the contending parties that Moore and his associates might retain possession of the property and continue the business at Willow Springs, pending the appeal, on giving an idemnity bond in the sum of $10,000, and permitting an inspection of the property and business by the then plaintiff at thirty-day intervals. In any event, Moore and his associates gave both bonds, one a regular appeal bond for $200 and the other an idemnity bond for $10,000, reciting therein that the appellants were to remain in possession and control of the said property pending the appeal, and conditioned to prosecute the appeal with diligence, comply with the judgment of the appellate court, and to hold the plaintiff harmless against loss or damage, waste or injury to the property, and account for all moneys collected, etc. This bond was presented to and approved by the judge in vacation, and at the time of the approval the following order was made and indorsed thereon without objection: 'Mountain Grove Creamery Company, has the right to inspect and examine the Willow Springs plant and property every thirty days in presence of L. N. Moore or manager thereof. E. P. DORRIS, Judge.'

"Under this somewhat irregular and informal procedure the then defendants, Moore and his associates, were permitted to retain possession and control of the disputed property and business. At the next, or July, term of the Howell County Circuit Court, the then defendants, relators here, presented a motion asking for a modification of the order permitting an inspection of the property by the Mountain Grove Creamery Company, and at the relator's instance the court made the order now complained of, and above set out."

The facts disclosed by the three opinions may be briefly summarized as follows:

On or about January 1, 1917, Moore, renouncing his agency and denying all right, title and interest of his erstwhile principal in and to the lease and property constituting the creamery plant at Willow Springs, assumed in his own right possession and control of the property. He then set about to form a new corporation of his own to take over and operate the plant. Thereupon an injunction suit was instituted against him in the Circuit Court of Howell County by the Mountain Grove Company, the essential purpose of which was to determine the ownership of the plant and lease. A decree was rendered on April 6, 1917, adjudging in effect that the property belonged to the Mountain Grove Company and enjoining Moore from in any way interfering with the management and control of it. An appeal was taken to the Springfield Court of Appeals.

Upon the allowance of the appeal, by consent, a supplemental order was entered by the circuit court staying execution of the decree pending the appeal, upon the filing by Moore of an indemnity bond. On April 20, 1918, the decree of the circuit court was affirmed by the Court of Appeals. The mandate, however, was withheld until July 19, 1918, pending an application by Moore to this court for a writ of *certiorari*.

On the foregoing facts the Court of Appeals held:

"In law and effect it (Mountain Grove Creamery, Ice & Electric Company) was in possession, because its agent Moore was in possession. It is true that the difference between the creamery company and Moore prevented the creamery company from exercising that full freedom of unlimited control that an owner of right should have, but this should not operate to the injury of one who was in no manner responsible for the controversy between the creamery company and Moore. By the decree in the circuit court in the injunction case, which decree was rendered April 6, 1917, the creamery company was given the right to the immediate possession of the Willow Springs plant, and Moore and his associates were enjoined and restrained from interfering. This fully appears in the opinion in the prohibition case and in the decree rendered by the circuit court in the injunction case. Moore and his associates in the injunction case were making preparations to appeal, and did appeal, but the appeal would not have acted as a matter of course to suspend the injunction decree. It appears, however, from the prohibition case that the creamery company and Moore entered into an agreement in the injunction case whereby Moore was to remain in the actual possession of the Willow Springs plant pending the injunction appeal, and that the creamery company would have the right to inspect every thirty days. . . .

"It also received the profits of the Willow Springs plant and paid the expense of operation during all the time that Moore was in charge, including the day that plaintiff was injured. . . .

"It is our conclusion that the creamery company's responsibility for the operation of the Willow Springs plant at the time of plaintiff's injury was as it would have been had there been no controversy between the creamery company and Moore."

The relation of principal and agent has its foundation in contract; it is created and *continued* through mutual agreement; either party has it in his *power* to terminate the relation at will. When Moore on the first of January, 1917, by his acts and conduct repudiated his agency and assumed possession and control of the creamery plant in his own right, and proceeded to operate it for himself, he ceased to be the agent of the Mountain Grove Creamery, Ice & Electric Company. He might thereafter have become for certain purposes

315 Mo.—40.

a *trustee ex maleficio;* but he was no longer an agent. The Court of Appeals seemed to think that the consent order entered by the circuit court continuing Moore in the physical possession and control of the plant after the rendition of the decree of April 6, 1917, operated in some way to make Moore the agent of the Creamery Company, but plainly the stipulation and indemnity bond, and the order of the court made pursuant thereto, were designed merely to preserve the *status quo* until the final termination of the litigation respecting the property, and they can be accorded no other effect. It is further suggested in the opinion that the Creamery Company finally received all of the profits made by Moore during the time he was operating the plant under claim of ownership. That fact is without influence on the question of Moore's agency. Having finally lost the suit he was bound to account for the profits under the terms of the indemnity bond; without the bond he could have been compelled to account as trustee.

At the time of Vaughn's injury Moore was in the possession and control of the creamery plant and was operating it. It subsequently developed as a result of the litigation, that if Moore had the *legal right* to operate it at all during that time, it was *only as the agent of the Creamery Company*. But he was not in fact so operating it; he had renounced his agency; he was not acting within the scope of that or any other agency; he was acting for himself; and while so acting his negligence caused Vaughn's injury. The holding of the Court of Appeals that the Creamery Company is responsible for the consequences of that negligence clearly contravenes many decisions of this court.

In Hilsdorf v. St. Louis, 45 Mo. l. c. 98, we said: "The rule that prescribes the responsibility of principals, whether private persons or corporations, for the acts of others, is based upon their power of control. If the master cannot command the servant, the acts of the servant are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and if a principal cannot control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim, *respondeat superior*, apply to them, for there is no superior to respond."

And in Whiteaker v. Railroad, 252 Mo. l. c. 458: "The general rule is that the maxim, *respondeat*, applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, or wilfully and maliciously, or even contrary to his orders or criminally, in some instances. That general rule is hornbook doctrine and beyond dispute."

And again in Wolf v. Terminal Ry. Assn., 282 Mo. l. c. 563: "The question is, was the act done by virtue of the employment and in furtherance of the master's business? [Hinkle v. Railroad, 199 S. W. 227.] 'Whose business was being done and whose general purposes were being promoted?' [Maniaci v. Express Co., 183 S. W. 981.] Was the servant acting in the line of his employment, about his master's business and seeking to accomplish his master's purpose?"

Moore at the time the negligent act was committed was not engaged in the business of the Creamery Company, but his own. He was not then subject to control by the Creamery Company as its agent, because the relation of principal and agent had been previously terminated by him. The Creamery Company is therefore not responsible for his tortious act under the maxim, *respondeat superior.*

For the reasons above indicated the judgment of the Court of Appeals, to the extent that it affirms the judgment of the circuit court as to the Creamery Company, and the opinion of the Court of Appeals, to the extent that it holds the Creamery Company liable for the negligent acts of Moore, should be quashed. It is so ordered. All concur, except *Graves, J.,* absent.