35 N.J. Super. 260 (1955)
113 A.2d 838
THOMAS D. EVANS, PLAINTIFF-APPELLANT,
v.
JOHN F.D. ROHRBACH, JOHN H. MATTHEWS, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1955.
Decided April 28, 1955.
*261 Before Judges GOLDMANN, FREUND and CONFORD.
*262 Mr. Hyman W. Rosenthal argued the cause for plaintiff-appellant (Mr. Harry Chashin, and Messrs. Marcus & Levy, attorneys).
Mr. Stanley G. Bedford argued the cause for defendants-respondents (Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a summary judgment on behalf of defendants rendered in the Law Division. Plaintiff, an employee of Raybestos-Manhattan, Inc., was injured on September 24, 1951 while rubber cementing the inside of a metal tank at the Passaic plant of the company. There was an explosion and fire inside the tank and the consequent infliction on plaintiff of the extensive injuries which are the basis of the present action for damages.
Plaintiff had previously petitioned for and been allowed an award in workmen's compensation against the company. In the present action he sued 21 directors, officers and employees of the company, alleging his injuries were due to their personal negligence, their maintenance of a nuisance, trap and concealed peril, their recklessness and their willful and wanton disregard for his life and safety as an employee of the common employer. Only six of the named defendants were served. Of these, Rohrbach was president and director; Matthews, vice-president, a director, and general manager of the Manhattan Rubber Division of the company which encompassed the Passaic plant; Kievit, comptroller, assistant treasurer and a director; Smith, vice-president in charge of sales and a director; and Hines and Hemphill, directors.
The company is a large industrial organization with plants variously situated in the United States and Canada. The Passaic plant covers 30 acres of land, occupies floor space of over a million square feet and has approximately 3,000 employees. One of its several departments is that of tank lining. It was here that plaintiff was working when injured. His employment had begun two weeks before. On the occasion *263 here involved he was working for the first time inside a tank. He was classified as a helper to one Harry. The foreman, Getts, told him to apply certain substances, of whose nature he was not informed, to the inside of the tank in the same manner as Harry had been doing. It appears that the lining materials were volatile and explosive.
Plaintiff had been given a gas mask but took it off because it "wasn't working right" and he "couldn't breathe through it." The tank in which the accident occurred was a cylinder, about 5 feet high and 10 to 12 feet long, and was closed except for two openings on one end, each about two feet in diameter. A fan was attached to the tank but the evidence is inconclusive as to whether it was operating at the time. For illumination there was provided an extension cord with a light bulb in the socket. The bulb was lying on the floor of the tank and, as plaintiff bent down to pick it up and touched the handle, there was a "bright flash" and the tank caught fire. Badly burned, plaintiff managed to extricate himself from the tank. According to the safety rules at the plant there was supposed to be a fire-watcher at every tank-hole in which work was being done, ready with water hose and blanket. No such precautions had been taken here. Moreover, company rules required employees in tanks to wear woolen sweatshirts and canvas booties "to prevent sparking from shoes." Plaintiff was given no such equipment. A fire extinguisher was seven to ten feet away from the tank. The rules forbade more than one dipper of cement in the tank at one time. Plaintiff was given and had a two quart can of the cement in the tank.
The statutory coverage of workmen's compensation does not in this State obviate a right of action on the part of an injured employee against a fellow employee "whose negligence or wrong occasions his injury." See Stacy v. Greenberg, 9 N.J. 390, 397 (1952). And while "a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character," yet "a director or officer who commits the tort or who directs the tortious act to be done, or participates or cooperates therein, is liable to *264 third persons injured thereby, even though liability may also attach to the corporation for the tort." Sensale v. Applikon Dyeing & Printing Corp., 12 N.J. Super. 171, 175 (App. Div. 1951). The problem confronting us here is whether the relationship of the defendants, or of any of them, to the specific industrial operation which gave rise to plaintiff's injuries was sufficiently direct or close so that it may be fairly said that they did participate or cooperate therein to an extent which should preclude their exculpation from liability to the plaintiff as a matter of law.
The operative facts are comprehensively disclosed by answers to interrogatories and depositions. Rohrbach, president of the company, as well as Hines and Hemphill, directors, had no duties or responsibilities specifically concerned with operation of the Passaic plant. Kievit, a financial officer of the company, and Smith, in charge of sales of its rubber products, had nothing to do with production at Passaic. There is no basis for any assumption that trial of the case might result in any qualification of the explicit negation, in what was before the trial judge, of the remotest connection between the named defendants and the operations resulting in plaintiff's injury. Plaintiff contends, as to all of the defendants, that the motion for summary judgment should have been denied because there were material fact issues as to whether (1) the activities and instrumentalities were so hazardous and dangerous as to impose on them the duty to employ proper safeguards for plaintiff's protection; (2) they were inattentive to their supervisory and executive duties; (3) they were actively in control of the activities and instrumentalities and actively participated in producing plaintiff's injuries; and (4) they negligently employed unskilled and incompetent personnel to supervise and assist plaintiff.
As to any of the defendants other than Matthews there was no showing whatever sufficient to create a fact issue in any respect thus assigned. Nor would sound concepts of corporate business administration admit corporate directors, particularly of an enterprise of this magnitude, to participation in such immediate supervisory activity as concerned the *265 safe conduct of the operation in which plaintiff was here injured. See Copeland and Towl, The Board of Directors and Business Management (1947), pp. 138, 139, "a director cannot perform executive functions without becoming an executive." The law will protect the director who, as in the case of those here involved, stays within his sphere. 3 Fletcher, Corporations (rev. ed. 1947), § 1135, p. 707. It had better, if competent and responsible people are to be expected to serve on the directorates of vital industries. Cf. case note, Position of Corporate Director as Sui Generis, 35 Minn. L. Rev. 564, 565 (1951). Mere knowledge on their part of hazards involved in some of the productive enterprises of the company does not make them personally responsible for ensuing accidents, where management controls are properly delegated. See 2 Thompson on Corporations (2d ed. 1909), § 1280, p. 290.
A closer question is presented as to the defendant Matthews. In 1951 he was executive vice-president of the company. He had been with it 40 years and associated with the Manhattan Rubber Division as assistant factory manager from 1940 to 1944, assistant general manager from 1944 to 1946, general manager until 1950, and vice-president since. He is thoroughly familiar with the processes involved in rubber lining of metal tanks, including the associated hazards to employees. He was in direct charge of operations of the Passaic plant and of the methods of production. But his duties as vice-president extended to management of two other plants of the company in Wisconsin and Indiana. At the Passaic plant Matthews heads a hierarchy of executive management which includes in descending order of responsibility to the specific operation implicated in this case, a factory manager, assistant factory manager, production manager, plant safety engineer, tank lining manager, department production manager and foreman. Safety precautions were in charge of the safety engineer, Boyd, and the supervisory staff of the department. Manufacturing processes were specified by research laboratories.
*266 We have carefully considered the contention that the facts here disclosed, or reasonably subject to anticipated development at the trial, do or might raise a question which plaintiff is entitled to have a jury pass upon in relation to Matthews' connection with the accident. But we think Matthews was reasonably entitled to assume, in the absence of notice to the contrary, that the safety regulations concededly promulgated by the company in application to tank lining working procedures were being enforced and that supervision in that regard was being exercised by one or more of those responsible in the chain of authority. No case cited to us or exposed in independent research supports the holding-in of a management executive so far removed from the instrumentality of injury as was Matthews here. O'Brien v. Traynor, 69 N.J.L. 239 (E. & A. 1903) (direct participation by foreman); Churchill v. Stephens, 91 N.J.L. 195 (E. & A. 1917) (direct participation by foreman); Duffy v. Bates, 91 N.J.L. 243 (E. & A. 1918) (direct participation by president and general manager). And see Sensale v. Applikon Dyeing & Printing Corp., supra; annotations in 20 A.L.R. 146; 99 A.L.R. 408, 422.
In principle, there appears to be no reason why the rule of individual liability of the corporate manager or other employee in relation to the duty owing to third persons, generally, should be different than as to an injured employee. 1 Mechem, Agency (2d ed. 1914), § 1483, p. 1102. But resort to New Jersey cases exemplifying the analogical rule discloses none close enough to help plaintiff. See Pennington Trap Rock Co. v. Pennington Quarry Co., 22 N.J. Misc. 318 (Sup. Ct. 1944); Reliable Woodworking Co. v. Lindeman, 105 N.J.L. 121 (E. & A. 1928); Tompkins v. Burlington Island Amusement Co., 102 N.J.L. 411 (E. & A. 1926); Clark v. Borough of Cliffside Park, 110 N.J.L. 589 (E. & A. 1933). Nor do the out-of-state authorities invoked by plaintiff concern a relationship as remote as that here presented as to Matthews. Vaughn v. Mountain Grove Creamery, Ice & Electric Co., 275 S.W. 592 (Mo. Ct. App. 1925), reversed on other grounds, State ex rel. Mountain Grove Creamery, Ice *267 & Electric Co. v. Cox, 315 Mo. 619, 286 S.W. 368 (Sup. Ct. 1926); McCarver v. St. Joseph Lead Co., 216 Mo. App. 370, 268 S.W. 687 (Ct. App. 1925); Brunski v. Ford Motor Co., 299 F. 807 (D.C.W.D. Mo., 1923); Givens v. Savona Mfg. Co., 196 N.C. 377, 145 S.E. 681 (Sup. Ct. 1928).
Plaintiff contends that a direct line of responsibility tying Matthews to his specific misfortune could be imposed by a jury on the basis of what is described as incompetence and negligence by the safety engineer Boyd and Matthews' participation by engaging Boyd without regard to his qualifications for that position. Boyd is not a defendant. He or others may very well have defaulted in their duty to plaintiff in the premises. But it is not shown that management had not instituted a safety program for tank lining procedures. To the contrary. Nor is there anything at all to suggest that Matthews had any reason for supposing that Boyd, by 1951, was not competent and alert to his responsibilities. True, when Matthews designated him for this position in 1940, he was not versed in safety technique, but his background and education were apt. He had three years at the United States Naval Academy and a similar period at Massachusetts Institute of Technology. His preparatory education was a scientific course. After taking the assignment as safety engineer in the company he took courses in first aid and safety engineering and has continually kept himself abreast of current knowledge and technique in the field.
On what is presented we do not conceive that a jury could have properly been given an issue based upon Matthews' asserted neglect in permitting Boyd to function as safety engineer at the plant in 1951.
While there are suggestions that the responsibility of a corporate officer or director for torts of a subordinate may be premised upon negligence in engaging or supervising him, 19 C.J.S., Corporations, § 846, p. 274; United States v. Stone Cliff Coal & Coke Co., 6 F. Supp. 1 (D.C.S.D.W. Va. 1934); Lowell Hoit & Co. v. Detig, 320 Ill. App. 179, 50 N.E.2d 602 (App. Ct. 1943); Solomon v. Bates, 118 N.C. 311, 24 S.E. 478, 481 (Sup. Ct. 1896); Wallace v. *268 Lincoln Savings Bank, 89 Tenn. 630, 15 S.W. 448, 454 (Sup. Ct. 1891); Thompson on Corporations, ubi cit., supra, we find no case in which a finding of liability of a superior was actually predicated solely upon carelessness in engaging or supervising the subordinate official to whose default the injury sued for was traceable. We do not suggest that liability might not be so bottomed in a proper case. Cf. Seismic Explorations, Inc. v. Dobray, 169 S.W.2d 739 (Tex. Civ. App., 1943). But here the chain of responsibility was effectively broken by Matthews' right to assume that Boyd's ten years of training and experience in safety made him competent and by the interposition in the chain between Boyd and Matthews of at least two other production executives upon whom Matthews could rightfully and appropriately depend in supervising Boyd and the operations directly involved. See Holden, Fish, Smith, Top Management Organization and Control (1948), p. 30. In the absence of directional legislation the evolution of the common law ought to be by judicial decisions grounded in an awareness of "the psychological, sociological and economic facts" which give force and significance to such decisions. Cohen, Transcendental Nonsense and the Functional Approach, 35 Columbia L. Rev. 809, 834 (1935). We find no potential jury issue based upon Matthews' relationships with Boyd. Tibbetts v. Wentworth, 248 Mass. 468, 143 N.E. 349 (Sup. Jud. Ct. 1924); Kulesza v. Chicago Daily News, Inc., 311 Ill. App. 117, 35 N.E.2d 517 (App. Ct. 1941); Tauscher v. Doernbecher Mfg. Co., 153 Ore. 152, 56 P.2d 318 (Sup. Ct. 1936).
We have referred to plaintiff's insistence that the motion for summary judgment should have been denied on the ground, inter alia, that it was represented on his behalf by affidavit that much additional proof of the dangerousness of the manufacturing process and showing the knowledge and control thereof by defendants would be submitted by him at the trial. The affidavit gives the names of other employees of the company proposed to be called as witnesses. But there is no persuasive suggestion as to why such proof was not adduced on depositions or any indication of any real basis *269 for expecting that there would result a material difference in the factual picture already apparent; nor was there a request for a stay of disposition of the motion to permit the taking of additional depositions. R.R. 4:58-7. Plaintiff did take comprehensive depositions from four of the defendants, including Matthews, and from the safety engineer, Boyd. All of these were full and frank in their disclosure under searching examination of what seems to us a most fulsome description of the manufacturing operation in question, and, taken together with answers to interrogatories by all the defendants, of the nature of the relationship of each of the defendants thereto. Where it appears affirmatively from an apparently full exposure of the material facts that there is no liability as a matter of law and there is no suggestion of the likelihood of establishing counteracting or neutralizing facts in advance of trial, summary judgment should not be withheld, giving full heed to the admonition vouchsafed by the Supreme Court in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-77 (1954).
Judgment is affirmed.