SAMUEL HIRSCH, PLAINTIFF-APPELLANT, v. AUGUST PHILY, MURRAY WHITE AND SUPERTEX DYEING & FINISHING CO., INC., DEFENDANTS-RESPONDENTS, AND DOMINICK SCIALLA, DEFENDANT.

Argued April 24, 1950—Decided May 8, 1950.

410

*Mr. Max L. Rosenstein* argued the cause for the appellant.

*Mr. Martin Kimmel* argued the cause for the respondent (*Mr. Colombo Cammarano,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. The plaintiff appealed to the Appellate Division of the Superior Court from a judgment of the Chancery Division of that court dismissing his complaint and we have certified the appeal here on our own motion.

The plaintiff, who is in the business of discounting accounts receivable, advanced to the Artex Dyeing & Finishing Co., Inc., over a period of five years various sums for which Artex gave him demand promissory notes in the amount of each advance and, as collateral security therefor, assignments of accounts receivable. At the time of the matters complained of herein the notes aggregated $23,700 and the accounts receivable $31,261.13. Each of these assignments, all of which are in the same form, sets forth the name of the debtor, his address, and the gross amount of the invoice, and contains the following language:

"For value received, we do hereby sell, transfer, and set over to S. HIRSCH, their successors, assigns and legal representatives, the claim and account set forth above, and all our right, title and interest therein and to any and all of the merchandise therein described, and any and all of the merchandise returned or unaccepted thereon. * * *

"And hereby constitute and appoint, and by these presents do constitute and appoint S. HIRSCH our true and lawful attorney irre-

vocable, for us and in name and stead, but to its own·use and benefit to sell, assign, transfer or set over, demand, compromise or discharge, pledge, sue for and collect the foregoing accounts, and to receive all moneys due or to grow due thereon. * * *"

The amount of the advance in each instance approximated sixty per cent of the total of the accounts receivable listed in each assignment. On some occasions these advances were made prior to the actual billing of the accounts receivable; in such instances the assignment of the accounts was delivered to the plaintiff a few days later after the billing had in fact been made. As checks were received from the customers of Artex in payment of the accounts assigned to the plaintiff, the checks would be noted on a collection report by Artex and both the checks and the collection report would be held·for Leslie J. Cotter, the plaintiff's agent in charge of the Artex account, who would usually call at the Artex office twice a week. Cotter would examine the checks and the collection report and receive from Artex its check drawn on its general account to the order of the plaintiff for the amount of the promissory note secured by the particular assigned accounts represented by the customers' checks. Artex then deposited the customers' checks in its own account. This procedure was consistently followed for a period of about five years, on each occasion the customers' checks being retained by Artex until they had been examined and the collection report approved by Cotter. The customers of Artex were never notified of these assignments to the plaintiff and on no occasion did the plaintiff collect or attempt to collect the accounts directly from the customers. There was nothing in the assignment of accounts, however, which precluded the plaintiff·from dealing directly with the customers of Artex, but on the contrary the assignments, as is shown by the language above quoted, expressly gave the plaintiff that right.

On July 19, 1948, at which time Artex was indebted to the plaintiff in the sum of $23,700, secured by assigned accounts totalling $31,261.13, Cotter appeared as usual at the office of Artex and was shown the customer's checks aggregating

$11,179.97, and was told that this was all the money that had been collected from the customers on the assigned accounts. Cotter was then given two checks of Artex, one for $5,893.02 and another for $5,286.95. The second of these two checks Cotter was requested by the defendant White, who had succeeded the defendant Scialla as secretary of Artex, to withhold from deposit for several days, but when this check was deposited it was returned because there were insufficient funds in the Artex account to meet it. This check, however, was later made good by White. On several occasions thereafter Cotter made attempts to obtain further payments, but each time he was informed that no collections had been made. Finally at a meeting in August White told Cotter that Artex had ceased operations. When asked by Cotter what had happened to the assigned accounts, White replied, "The collections, they have been used up, dissipated, they are gone." At the same time White assured Cotter that the plaintiff would be paid. According to Cotter this was the first time he knew that anything was wrong with Artex. Thereafter Artex was adjudicated to be an insolvent corporation in a suit instituted against it in the Chancery Division of the Superior Court. The plaintiff filed a proof of claim in that proceeding in the sum of $12,520.03, representing the balance due the plaintiff from Artex on its demand promissory notes which had been secured, as hereinbefore set forth, by the assignments of accounts receivable that Artex had collected and appropriated to its own use. In making this proof of claim the plaintiff reserved the right to proceed at law or in equity against any other persons for the recovery of the moneys represented by these accounts receivable.

The present action was brought by the plaintiff against the defendants Phily, Scialla and White, officers of Artex, on the grounds that they had converted to their own use or to the use of Artex funds of the plaintiff amounting to $12,520.03, and against the defendant Supertex Dyeing & Finishing Co., Inc., on the grounds that it had been organized for the sole purpose of succeeding to the business of Artex and that its

assets should therefore be impressed with a trust for the benefit of the plaintiff. The defendant Scialla was never served, being outside of the jurisdiction, and no further steps were therefore taken against him. The claim against Supertex was abandoned at the pretrial conference and the complaint dismissed as against it. The only defendants on this appeal are Phily and White. At the trial below the court dismissed the complaint on the grounds (1) that there was no proof that any of the moneys collected upon the accounts receivable went to any of the defendants, and (2) that the alleged assignments held by the plaintiff were not in fact assignments but mere promises to pay the plaintiff's claim out of sums received from the accounts if and when they were collected.

While the plaintiff raised six questions in his brief and argued them orally, they may be resolved into two issues: (1) Was there a valid assignment of the accounts receivable from Artex to the plaintiff, and (2) assuming that there was a valid assignment, are the defendants Phily and White individually liable for the conversion of the accounts?

1. Answering the first of these two questions, it is clear that the assignments are valid. The case is not complicated by the rights and interests of any third parties, as are many cases concerning assignments; we need look merely to the agreement between the parties to determine the nature of the transaction between them. The terms of the assignments furnish the best evidence of the relation between the parties and leave no room for doubt as to the fact that there was a complete and unequivocal assignment of the accounts receivable to the plaintiff. The first paragraph quoted uses the technical words of assignment: "we * * * sell, transfer and set over * * * the claim and account set forth above, and all our right, title and interest therein," etc. The second paragraph quoted employs the traditional language of a power of attorney which has been used for centuries in the common law to describe the rights of an assignee: "and hereby constitute and appoint * * * S. Hirsch our true and lawful attorney irrevocable, for use and in [sic] name and stead,

but to its own use and benefit to \* \* \* sue for and collect the foregoing accounts, and to receive all moneys due or to grow due thereon." It is difficult to conceive of more effective language to express an outright assignment either technically or historically. By the assignments all right, title and interest to the accounts receivable in question was transferred from Artex to the plaintiff.

The validity of these assignments as between plaintiff and Artex is in no way affected by the fact that Artex may have acted as the agent of the plaintiff for the purpose of collecting these accounts, or that no notice of the assignment was given to the customers concerned, or that the assignments were given in advance of the actual billing of the customers. All of these points were resolved in *Cogan v. Conover Manufacturing Co.*, 69 *N. J. Eq.* 809, 811, 813, 814 (*E. & A.* 1906) :

"The first objection made to the claim of the trust company is that the paper does not amount to an assignment, but is a mere covenant to pay out of the proceeds of the contract with the Public Service Corporation. We do not question the distinction between the rights acquired under a mere covenant to pay and under an assignment. In our judgment the paper now in question amounts to an assignment. There is an 'actual appropriation which confers the present right on the assignee, although the circumstances may not admit of its immediate exercise.' 2 *Lead. Cas. Eq.* 1644. The language of the paper is that of an absolute assignment, and the fact that the Conover Company also agrees to act as agent in collecting the money does not militate against the plain construction of the preceding paragraph. The Conover Company does not thereby retain authority over the fund. Whatever it may do is to be done not in its own right, but as agent, and the very fact that it agrees to act as agent precludes the construction that the fund is to remain its own, or subject to its control except as agent.

"The fact that the money was not yet due affords no argument against our construction. Such is the ordinary case of an equitable assignment. The very fact that the money is not due, so that the assignment is not effective in a court of law is sometimes relied on to give jurisdiction to the court of equity. \* \* \*

"It is now argued that the assignment was not effective because notice was not given to the Public Service Corporation. As between the assignor and assignee and those standing in the shoes of the assignor, notice to the debtor or holder of the fund is not necessary. \* \* \* Cases in which notice to the debtor or holder of the fund

becomes important are cases where the question is one of priority between different assignees."

The only case cited by the court below to sustain its holding that the agreement between the parties was not an assignment but a promise to pay out of funds to be received is *American Pin Co. v. Wright,* 60 *N. J. Eq.* 147 (*Ch.* 1900); affirmed on opinion below, 85 *N. J. Eq.* 219 (*E. & A.* 1901), but that case is not in point. The agreement there adjudicated contained no language of assignment, created no power of attorney to act for the assignor in proceedings against the debtor, but merely provided:

"The second party further agrees that in the event that said right should succeed in negotiating his 'trolley deal,' so-called, in Montclair, N. J., or in selling his house in Montclair, the entire proceeds of either or both the said deals shall be immediately devoted to the payment of the indebtedness set forth in paragraph one in equal amounts to each individual composing the first party."

2. The assignments of the accounts receivable from Artex to the plaintiff being valid, we must next consider whether or not the defendants Phily and White are personally liable to the plaintiff for his being deprived of the sums collected by Artex on the assigned accounts and withheld from him. It is conceded in the defendant's brief that "it was definitely contemplated by the parties that Artex Dyeing & Finishing Co., Inc., was to collect the accounts receivable from the customers and pay over out of the proceeds thereof that portion of the same sufficient to satisfy plaintiff's advance thereon." When Artex failed to live up to this obligation and diverted the proceeds of the collected accounts to its own use, it became a constructive trustee for the plaintiff, 2 *Williston on Contracts,* § 445; 1 *Restatement, Contracts,* § 175 (1) (a). The individual defendants, however, assert that they are not personally liable for the plaintiff's loss, because there is no proof that they individually participated in the misappropriation of the moneys collected on the accounts receivable or that they received any of them, the only evidence

on the question of what became of the missing proceeds of the assigned accounts being the statement made by White to Cotter that "the collections, they have been used up, dissipated, they are gone." This contention of the defendants overlooks entirely the inferences that may legitimately be drawn from the fact that the defendants as officers of the corporation are presumed to direct its activities and to have knowledge of its affairs. It ignores the fact that the defendants were active in handling these financial transactions with the plaintiff over a long period of time and were well informed as to the plaintiff's rights in these accounts receivable. These facts constitute at least a *prima facie* case against the defendants. Instead of testifying in their own behalf, they were content to rest their case after offering in evidence the proof of claim filed by the plaintiff in the insolvency proceedings against Artex.

It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested, 152 *A. L. R.* 703; 3 *Fletcher on Corporations,* §§ 1140–1142. In *Rose v. Bernhardt,* 107 *N. J. L.* 501, 504 (*E. & A.* 1931), under a factual situation analogous to that here presented, the court stated:

"Where there is a fraudulent and unlawful conversion by the corporation then those who participate therein by instigation, aid or assistance are liable. * * * The mere fact that Bernhardt was acting as the president of the corporation and Weisberg was acting as its treasurer and that they individually did not receive any of this money is immaterial since there was evidence to justify the jury in concluding there was an unlawful and fraudulent conversion by the corporation which was directed by them. *Reliable Woodworking Co. v. Lindeman,* 105 *N. J. L.* 121."

The judgment below is reversed and the cause is remanded to the Chancery Division of the Superior Court with direction to enter judgment for the plaintiff and against the defendants Phily and White in the amount of $12,520.03, with interest and costs.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For affirmance*—None.