199 N.J. Super. 452 (1985)
489 A.2d 1209
VAN DAM EGG CO., PLAINTIFF-APPELLANT,
v.
ALLENDALE FARMS, INC., A CORPORATION, AND JOHN PUGLISI, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1985.
Decided March 14, 1985.
*454 Before Judges PRESSLER, BRODY and COHEN.
Robert B. Silverman argued the cause for appellant.
Ellen N. Hersh argued the cause for respondent John Puglisi (Craner & Nelson, attorneys).
No appearance on behalf of Allendale Farms, Inc.
The opinion of the court was delivered by COHEN, J.A.D.
The Law Division dismissed the second and third counts of plaintiff's complaint for failure to state a cause of action upon which relief could be granted. R. 4:5-2. Plaintiff appealed, and we now reverse.
Plaintiff's first count was brought solely against defendant Allendale Farms, Inc. It alleged that in July and August 1981 plaintiff sold Allendale eggs for which Allendale failed to pay *455 the agreed price of $100,372. Allendale did not defend, and judgment was entered against it.
The second and third counts were against defendant John Puglisi. The second count alleged that Puglisi was the president and sole stockholder of Allendale; that he ordered eggs from plaintiff; that he arranged for the sale to be made on credit, "representing that Allendale would pay for the eggs ...," and that, at the time he placed the order, "Puglisi knew that Allendale was hopelessly insolvent and could not pay its creditors." The second count went on to allege that Puglisi's representations that Allendale would pay for the eggs were knowingly false and were made with the intention that plaintiff rely on them; that plaintiff did rely and that shortly after the last delivery of eggs Allendale ceased operations. The third count repeated all of the allegations of the second, charged that Puglisi's conduct was malicious and demanded punitive damages.
Defendant Puglisi's motion to dismiss the second and third counts for failure to state a cause of action was made for the first time on the day of trial after the jury was selected. Even though the complaint's allegations of fraud were general and conclusory, defendant did not, during the two years between filing of the complaint and the day of trial, seek relief from plaintiff's failure to plead the particulars of the fraud. R. 4:5-8(a); R. 4:6-4. Defendant received a plainly unresponsive answer to an interrogatory seeking the facts underlying the allegations of fraud, but it did not seek relief on that score either. R. 4:23-1.
On the motion to dismiss under R. 4:5-2, the complaint must be read indulgently, Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29-30 (App.Div. 1983), to charge that, in order to persuade plaintiff to sell eggs to Allendale, Puglisi made the specific affirmative representation to plaintiff that Allendale had the capacity to pay for them and intended to *456 do so, knowing that Allendale was hopelessly insolvent and would not be able to pay.
The Law Division granted the motion to dismiss on the strength of our decision in Allesandra v. Gross, 187 N.J. Super. 96 (App.Div. 1982). In that case, plaintiffs were a group of clothing manufacturers who delivered merchandise to a corporate buyer on open account. After the corporation filed a Chapter XI bankruptcy petition, plaintiffs started an action against Gross, the president and principal stockholder. The first three counts of the complaint charged that, when Gross ordered the merchandise, he fraudulently failed to disclose to plaintiffs the true financial condition of the corporation in order to induce plaintiffs to sell it on credit.
The trial court granted Gross's motion to dismiss the first three counts against him. The gist of its opinion was quoted in the Appellate Division opinion:
While there is a strong judicial trend towards consumerism and the protection of parties to commercial transactions from overreaching by one party with respect to the other party, we have not reached the point where in a commercial transaction one corporation is required to disclose to another corporation that it may or may not be in a position to pay its bills. Many avenues of inquiry are available to a party to a commercial transaction if it seeks protection. * * * The plaintiff did not avail himself [sic] of any and relied upon ultimate payment by the corporation. To charge an officer or an agent of the corporation personally with the responsibility for payment would reduce commerce to a shambles. The law imposes no such responsibility. [187 N.J. Super. at 101].
This court affirmed the dismissal substantially for the reasons expressed by the trial court.
We subscribe to the principle of Allesandra, which is that a corporation and its agents ordinarily have no duty to those with whom the corporation does business to come forward unbidden with information bearing on its ability to meet its obligations. But that is not this case, at least not on a sympathetic reading of the complaint.
The allegations of the complaint include all of the elements of the common law tort of fraud: a material representation of a presently existing or past fact made with knowledge *457 of its falsity with the intention that the other party rely, justifiable reliance and damage. Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 624-625 (1981); Nappe v. Anschelewitz, Barr, Ansell, etc., 189 N.J. Super. 347, 354-356 (App.Div. 1983). A promise to pay in the future is fraudulent if there is no present intent ever to do so. Kuhn v. Seaton, 187 Kan. 106, 353 P.2d 959, 961 (1960). The complaint is not faulty because it alleges that Puglisi was president and sole stockholder of the corporation at the time of the fraud or because it does not allege that Puglisi personally benefitted from his acts. A corporate officer or director is liable to persons injured by his own torts, even though he was acting on behalf of a corporation and his intent was to benefit the corporation, Cappiello v. Ragen Precision Indus., Inc., 192 N.J. Super. 523, 530 (App. Div. 1984), even though liability also attaches to the corporation, Trustees Structural Steel v. Huber, 136 N.J. Super. 501, 505 (App.Div. 1975) certif. den. 70 N.J. 143 (1976); Sensale v. Applikon Dyeing & Printing Corp., 12 N.J. Super. 171 (App.Div. 1951), and even though he derives no personal benefit. Hirsch v. Phily, 4 N.J. 408, 416 (1950); McGlynn v. Schultz, 95 N.J. Super. 412, 416 (App.Div. 1967), certif. den. 50 N.J. 409 (1967). See generally 3A Fletcher, Cyc. Corp. (Perm.Ed. 1975), §§ 1135, 1143.
A serious question in a case like this is whether reliance can be justified on oral representations of officers and principals in the context of commercial relations with the corporation. Sellers of goods on credit to a corporation know they are dealing with an entity with limited resources whose form of organization ordinarily shields its principals from liability for its debts. There are a variety of ways to check the corporation's credit-worthiness, including formal credit investigations, bank references and periodic statements of financial condition. In case of doubt, personal guarantees or other security can be demanded. Because of all that, we held in Allesandra that there is no duty, in the absence of some special relationship, for a corporation or *458 its representatives to volunteer information that might chill a supplier's willingness to extend credit.
It is different when a corporate representative reports falsely to a supplier, who he has reason to know relies on the assurance, that the hopelessly insolvent corporate employer is creditworthy. No public policy in favor of commerce shields the corporate representative from liability for the consequences of reasonable reliance on his lie. It is a fact question, in every case in which it is disputed, whether the supplier did rely and, if so, whether the reliance was justifiable. See Cargill, Inc. v. American Pork Producers, Inc., 426 F. Supp. 499 (D.S.D. 1977); 1 Harper and James, The Law of Torts, § 7.13 at 583-586, (1956); Prosser, Torts, (4 ed. 1971) § 108 at 714-720. But, there is nothing in the realities of commerce that necessarily renders such reliance unjustifiable as a matter of law.
Our holding is not novel. As early as 1789, it was held that one who fraudulently induced another to deliver goods on credit to a person he knew to be uncreditworthy could be held liable for the unpaid seller's loss. Pasley v. Freeman, 3 Term Rep. 51, 100 Eng.Rep. 450 (1789). Over 100 years ago, it was held in New Jersey that a bank director who dissuaded a withdrawal by an insecure depositor by telling him that he knew the bank's condition was good was liable for the depositor's loss if the representations were made with fraudulent purpose to deceive. Cowley v. Smyth, 46 N.J.L. 380 (Sup.Ct. 1884). It has been held elsewhere that a supplier who agreed to sell merchandise on credit to a corporation had a cause of action for the fraudulent misrepresentations by officers and directors as to its financial condition. Lillian Knitting Mills Co. v. Earle, 233 N.C. 74, 62 S.E.2d 492 (1950) and 237 N.C. 97, 74 S.E.2d 351 (1953). See also Annot, 32 A.L.R.2d 184, 227 (1953).
Our holding may seem to make it too easy for disappointed creditors to fabricate fraudulent oral assurances by agents and principals of hopelessly insolvent corporations. Just such a fear led to the rule making unenforceable an oral *459 promise to answer for the debt of another. N.J.S.A. 25:1-5 b. We will not, however, deny a meritorious cause of action on the thesis that it would be an easy one to fabricate. The judicial system has dealt for centuries with concocted claims, doing a greater measure of justice by weeding them out than by denying a hearing to meritorious and concocted claims alike. The law should not permit agents and principals of failing corporations to defraud suppliers of goods and credit with impunity by misrepresenting the financial condition of the corporation and its intentions toward its creditors.
The order dismissing the complaint is reversed. The matter is remanded to the Law Division, which might consider affording defendant a limited period of time to seek relief respecting the particulars of the alleged fraud and the unresponsive interrogatory answer mentioned earlier.