788 A.2d 268

JAN SALTIEL D/B/A EDGEWATER DESIGN ASSOCIATES, PLAINTIFF–RESPONDENT, v. GSI CONSULTANTS, INC., JOHN DOES 1–5 AND ABC CORPORATIONS 1–10, DEFENDANTS, AND HENRY INDYK AND RICHARD G. CATON D/B/A TURFCON, PROFESSIONAL TURFGRASS CONSULTANTS, DEFENDANTS–APPELLANTS.

Argued September 17, 2001—Decided January 23, 2002.

298

*David R. Forrey* argued the cause for appellant Henry Indyk (*Francis J. Brennan, III,* attorney).

*Gary S. Shapiro* argued the cause for appellant Richard G. Caton (*Shapiro & Sternlieb,* attorneys).

*Gregory B. Reilly* argued the cause for respondent (*Lowenstein Sandler,* attorneys; *John E. Clark* and *Michele Nance Breen,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

In this appeal we consider whether corporate officers can be held personally liable for allegedly tortious conduct under the participation theory of liability. The conduct at issue arose after the corporate defendant entered into a contract with plaintiff pursuant to which it was to design and prepare specifications for the turfgrass to be used on two athletic fields at a New Jersey university. Plaintiff alleged that the corporation and its officers negligently prepared the turfgrass specifications resulting in substantial financial loss to plaintiff. Accordingly, plaintiff sought to recover in tort against the officers personally based on the participation theory of liability.

The trial court granted summary judgment for both individual defendants, concluding that their status as corporate officers insulated them from personal liability. In an unpublished opinion the Appellate Division reversed, holding that the officers' complicity in the preparation of the allegedly defective specifications could provide a basis for personal tort liability under the participation theory. We granted the officers' petitions for certification, 167

*N.J.* 89, 769 *A.*2d 1051 (2001), and now reverse the judgment below.

## I

In December 1997, plaintiff Jan Saltiel, doing business as Edgewater Design Associates, filed suit against GSI Consultants, Inc. (GSI), a Pennsylvania corporation, Dr. Henry Indyk, a GSI corporate officer, and Richard Caton, a former GSI corporate officer. The complaint sought damages arising from allegedly defective turfgrass specifications prepared by defendants and used by plaintiff in the reconstruction of a softball field and soccer field located at William Paterson University (WPU) in Wayne, New Jersey. Plaintiff is a landscape architect and GSI is a turfgrass consulting company doing business under the name Turfcon. Plaintiff has since voluntarily dismissed her claims against GSI.

The underlying transaction involved WPU's award to plaintiff in March 1995 of a contract to provide landscaping architectural services for the reconstruction of its athletic fields. Plaintiff in turn requested a proposal from GSI outlining turfgrass specifications for the reconstruction. In February 1995, GSI submitted a proposal, signed by Caton, listing the services that it would perform in connection with the WPU contract. The letter was on the letterhead of Turfcon, and the letterhead stated: "GSI Consultants, Inc./Turfcon Division." Plaintiff accepted the proposal and engaged GSI to prepare the specifications for the WPU athletic fields. GSI performed the following services: preparation of specifications for the design of a new drainage system; design, preparation of specifications, and testing of a rootzone mixture; preparation of specifications and selection of a new sod; and monitoring of the actual reconstruction, which was to be completed by a contractor selected by WPU after a public bid, ultimately Flanagan's Inc.

The softball field was constructed first. Indyk, in his capacity as a corporate officer of GSI, made several site visits to monitor the construction of the field and correct any deviations from the

turfgrass specifications. The record indicates that WPU has expressed no dissatisfaction with the work done on the softball field.

The soccer field was completed in September 1996. Indyk did not visit the soccer field on a regular basis as had been his practice with respect to the softball field. Almost immediately after its completion, the soccer field developed problems of standing water and inadequate drainage. In response to the problems, WPU installed additional drainage facilities and began core aerification of the soccer field's turf. However, the drainage did not improve and the turfgrass was consistently damp or soggy. The soccer field remained unfit for athletic use.

Plaintiff hired Turf Diagnostics and Design, Inc. (TDD) to determine the cause of the drainage failure. After an investigation, TDD informed plaintiff that, although the soccer field had been constructed in accordance with GSI's field specifications, the field specifications had been negligently prepared because the rootzone designed by GSI formed a nearly impermeable barrier that did not allow for proper water drainage. As required under plaintiff's contract with WPU, she prepared new specifications for the field and hired a contractor to reconstruct it at a cost of $351,000. Plaintiff's contract with GSI did not require GSI to provide a bond or demonstrate evidence of professional liability insurance.

Plaintiff's complaint alleges claims against all defendants for negligent design, negligent misrepresentation, breach of contract, breach of warranty, promissory estoppel, and agency liability. The parties conducted discovery that focused primarily on whether defendants Indyk and Caton could be held personally liable. In January 1999, Indyk moved for summary judgment on the ground that he could not be personally liable for acts he performed as an officer on behalf of GSI. The trial court granted summary judgment, reasoning:

> It [ ] appears the very purpose for incorporation—one of the purposes is—is to hopefully escape from individual liability or responsibility. And certainly, when

you look at the Turfcon letterhead, when they wrote to Jan Saltiel of Edgewater Design Associates, although Turfcon appears on the top of that letterhead, the GSI Consultants, Incorporated clearly appears on the bottom with two phone numbers, and the address of the entity.

So I don't share the same impression of this case as the plaintiff shares. I—I think the defense is absolutely correct in their motion for summary judgment to dismiss Dr. Henry Indyk from this case. New Jersey law should apply. The fields are about 10 miles from this courthouse, at the William Paterson College, the now William Paterson University in Wayne. The fact that the shares were not signed pursuant to Pennsylvania law, to me, is not of any great consequence, because they were delivered. They're in the names of the—Dr.—Dr. [Caton], Dr. Indyk, and their wives. They're in the stock agreement that was entered into as—as well. And there's no question that Dr. Indyk was acting through his corporation when he agreed to undertake the responsibilities of overseeing the two fields that were being built in William Paterson, or being renovated in William Paterson. So I'm going to grant defendant's application for summary judgment on behalf of the individual[.]

Thereafter, Caton also moved for and was granted summary judgment, essentially on the basis of the same analysis that supported summary judgment for Indyk. In an unreported opinion the Appellate Division reversed both summary judgment rulings. That court concluded that both Indyk and Caton could be personally liable for negligence under the so-called "participation theory of personal liability."

## II

The sole issue on appeal is whether the trial court properly granted summary judgment in favor of defendants Caton and Indyk. Its resolution requires us to consider: (1) the proper application of the participation theory of personal liability for tortious conduct by corporate officers under New Jersey law; and (2) whether the plaintiff's claim against Indyk and Caton sounds in tort or contract.

We note at the outset that summary judgment may be granted if, according the plaintiff the benefit of all positive inferences from the facts as presented, a trial court determines that plaintiff has failed to assert a genuine issue of material fact. *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995). We recently observed that the "determination whether there

exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented ... are sufficient to permit a rational factfinder to resolve the alleged dispute in favor of the non-moving party." *James v. Bessemer Processing Co., Inc.,* 155 *N.J.* 279, 305, 714 *A.*2d 898 (1998).

## A

The Appellate Division's opinion correctly determined that our caselaw has recognized the applicability of the participation theory of personal liability for the tortious conduct of corporate officers. Fletcher's Cyclopedia of the Law of Private Corporations defines the participation theory as follows:

> An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable for resulting injuries; but an officer who takes no part in the commission of the tort is not personally liable to third persons for the torts of other agents, officers or employees of the corporation. Officers and directors may be held individually liable for personal participation in tortious acts even though they derived no personal benefit, but acted on behalf, and in the name of, the corporation, and the corporation alone was enriched by the acts.
>
> . . . .
>
> An officer may be personally liable for a tort to a third person where the corporation owed a duty of care to that person, the duty had been delegated to the officer, and the officer breached this duty through personal fault causing injury. If the defendant's duty had been delegated with due care to some responsible subordinate, the defendant was not at fault and will not be held liable and the defendant knew or should have known of its nonperformance or malperformance and did not cure the risk of harm.
>
> [3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 1137 (rev.perm. ed.1994)(footnotes omitted).]

Thus, the essence of the participation theory is that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort. A predicate to liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct.

New Jersey cases that have applied the participation theory to hold corporate officers personally responsible for their tortious conduct generally have involved intentional torts. More specifically, the majority of the cases have involved fraud and conversion. *See, e.g., Charles Bloom & Co. v. Echo Jewelers,* 279 *N.J.Super.* 372, 382, 652 *A.*2d 1238 (App.Div.1995)(holding that defendants could be personally liable for alleged conversion even if they were acting in corporate capacity); *Van Dam Egg Co. v. Allendale Farms,* 199 *N.J.Super.* 452, 457, 489 *A.*2d 1209 (App.Div.1985)(declining to dismiss fraud complaint against corporate officer even though it did not allege that he personally benefitted from allegedly wrongful acts); *Robsac Indus., Inc. v. Chartpak,* 204 *N.J.Super.* 149, 156, 497 *A.*2d 1267 (App.Div.1985)(reversing summary judgment for defendant corporate officer charged with malicious interference with contract, fraudulent misrepresentation, and defamation notwithstanding that liability also was imposed on corporation); *McGlynn v. Schultz,* 95 *N.J.Super.* 412, 417, 231 *A.*2d 386 (App.Div.1967)(finding corporate officers personally liable for knowingly acquiescing in and ratifying alleged conversion).

Over fifty years ago this Court in *Hirsch v. Phily,* 4 *N.J.* 408, 416, 73 *A.*2d 173 (1950), articulated the basis for holding corporate officers personally liable in such cases:

> It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.
>
> [Citations omitted.]

Other jurisdictions also adhere to that principle. In *Central Benefits Mutual Insurance Co. v. RIS Administrators Agency, Inc.,* 93 *Ohio App.*3d 397, 638 *N.E.*2d 1049, 1053 (1994), the court applied the participation theory in holding that the defendant corporate officer could be personally liable for a conversion that occurred during his tenure as president of an insurance company.

*See also Bernhardt v. Needleman,* 705 *A.*2d 875, 878 (Pa.Super.Ct.1997)(holding attorney and his corporation liable for breach of contract and conversion in claim for recovery of referral fee); *Shonberger v. Oswell,* 365 *Pa.Super.* 481, 530 *A.*2d 112, 114–15 (1987)(holding that consignment agreements formed basis for conversion action under participation theory); *Johnson v. Harrigan–Peach Land Dev. Co., Inc.,* 79 *Wash.*2d 745, 489 *P.*2d 923, 928 (1971)(holding corporate officers personally liable for conversion of plaintiff's property under participation theory).

A number of jurisdictions, including New Jersey, also apply the participation theory to hold corporate officers personally liable for certain statutory violations. For instance, in *Kugler v. Koscot Interplanetary, Inc.,* 120 *N.J.Super.* 216, 257, 293 *A.*2d 682 (1972), the defendant corporate director of a cosmetics corporation was held personally liable for unlawful practices under the Consumer Fraud Act. A Texas court of appeals recently concluded that a corporate officer of a construction company could be held personally liable for violation of that state's Deceptive Trade Practices Act. *Keyser v. Miller,* 47 *S.W.*3d 728, 733 (Tex.App.2001). *See also Plowman v. Bagnal,* 316 *S.C.* 283, 450 *S.E.*2d 36, 37–38 (1994)(acknowledging "controlling persons" of corporation are potentially personally liable for violations of Unfair Trade Practices Act). In contrast, the Virginia Supreme Court held that the corporate director and majority shareholder of a check cashing company could not be personally liable for actively participating in illegal acts that violated Virginia's Consumer Finance Act. *Greenberg v. Commonwealth,* 255 *Va.* 594, 499 *S.E.*2d 266, 270 (1998).

The conduct at issue in this appeal does not implicate intentional tortious conduct, but rather the individual defendants' allegedly negligent conduct in designing the specifications for the soccer field. Indyk and Caton assert that the participation theory is limited to intentional torts by corporate officers. The Appellate Division, although recognizing the lack of precedent in New Jersey and other jurisdictions applying the participation theory to negligent conduct, was unwilling to limit the doctrine to intention-

ally tortious acts. That court relied on three New Jersey decisions to support its broader application of the participation theory.

In *Tompkins v. Burlington Island Amusement Co.*, 102 *N.J.L.* 411, 132 *A.* 670 (1926), the Court of Errors and Appeals affirmed a judgment against the general manager of an amusement park located on an island in the Delaware River. The general manager's liability stemmed from his allegedly supervisory responsibility for the defective construction of a "slip" connecting the pier leading to the park to a float that provided access to small boats. Plaintiff sustained injuries when the slip collapsed. The Court relied on the general manager's alleged responsibility for construction of the defective slip as the basis for his potential personal liability.

In *Sensale v. Applikon Dyeing & Printing Corp.*, 12 *N.J.Super.* 171, 79 *A.*2d 316 (1951), the Appellate Division recognized the potential for liability under the participation theory for negligent conduct, but held that the facts presented did not personally implicate the president of the defendant corporation in the events leading to an employee's death. The decedent was electrocuted while moving a machine for his employer. The court found that there was insufficient evidence to establish the president's requisite participation in the events resulting in the plaintiff's death. *Id.* at 175, 79 *A.*2d 316.

In *Evans v. Rohrbach*, 35 *N.J.Super.* 260, 113 *A.*2d 838 (App. Div.), *cert denied*, 19 *N.J.* 362, 117 *A.*2d 203 (1955), the plaintiff employee sustained serious injuries from an explosion and fire inside the metal tank where he had been working. Although the court acknowledged that the worker's compensation statute in force at that time did not necessarily preclude an employee's cause of action against a fellow employee, the court declined to hold several corporate officers of the employer corporation named in the complaint personally liable for the alleged negligence resulting in the plaintiff's injuries. However, the court acknowledged the potential for such liability:

> The problem confronting us here is whether the relationship of the defendants, or of any of them, to the specific industrial operation which gave rise to plaintiff's injuries was sufficiently direct or close so that it may be fairly said that they did participate or co-operate therein to an extent which should preclude their exculpation from liability to the plaintiff [based on negligence] as a matter of law.
>
> [*Id.* at 264, 113 A.2d 838.]

The decisions in *Tompkins, Sensale* and *Evans* arguably support plaintiff's contention that the participation theory is not limited to intentional torts, and that the theory's application turns only on the question of whether there was actual participation in allegedly tortious conduct rather than on the nature of the tortious conduct. Although the theory may encompass conduct other than intentional torts, that issue has not been settled. Based on the application of the participation theory in other state courts, it may be argued that the theory should be limited to cases involving intentional wrongful conduct by corporate officers, or negligent conduct by such officers that results in personal injuries such as those involved in *Tompkins, Sensale,* and *Evans.*

Application of the participation theory to negligent conduct by corporate officers in other jurisdictions also has involved personal injury claims. In *Skelton v. Chemical Leaman Tank Lines, Inc.,* 1996 WL 278343 (Conn.Super.), the plaintiffs filed a negligence claim against the defendant chemical corporation and two of its employees for injuries sustained by their minor child as a result of the plaintiff's contact with toxic material emanating from defendant's property after a chemical explosion. Characterizing the participation theory as a "widely accepted" legal principle, the court denied summary judgment for the employee defendants on the basis that their behavior may have risen to the requisite " 'level of involvement in day to day business operations and participation in decisions regarding disposal of hazardous waste.' " *Id.* at *7 (quoting *Armotek Industries, Inc. v. Freedman,* 790 F.Supp. 383, 394 (D.Conn.1992)).

In a very recent Maryland case, *Shipley v. Perlberg,* 140 *Md.App.* 257, 780 A.2d 396, 2001 WL 1013369 (2001), the plaintiff filed a negligence claim for personal injuries resulting from lead

paint exposure. Defendant was an officer of a real estate corporation that was the lessor of the property on which the lead paint was found. The Maryland Court of Special Appeals acknowledged the general applicability of the participation theory, but held that the corporate officer was not sufficiently involved with the rental properties in question to justify the imposition of liability.

As noted by the Appellate Division, the Pennsylvania Supreme Court has applied the participation theory to negligence claims. In *Wicks v. Milzoco Builders, Inc.*, 503 *Pa.* 614, 470 *A.*2d 86 (1983), homeowners brought claims against three officers of the corporation that built the residential development in which the homeowners resided based on breach of implied and express warranties, negligence and misrepresentation. The court reversed the dismissal of the negligence and misrepresentation claims. Plaintiffs alleged that the defendants should have been aware that the location of their home created an unreasonable risk of the occurrence of drainage problems on their property. They further alleged that the resulting contamination on the property from chemical run-off, bacteria and slime made their homes uninhabitable and caused serious health problems for their families. In finding the officers potentially liable, the court made no distinction between intentional and negligent tortious conduct. The court recognized that "[u]nder the participation theory, the court imposes liability on the individual as an actor ... [and not] as an owner" when the evidence presented indicates he participated in the tortious conduct. *Id.* at 90.

In a case somewhat analogous to the facts in this record, the Maryland Court of Special Appeals affirmed a judgment against the president of a construction company for his participation in negligent conduct that resulted in severe cracks and holes in a brick wall attached to the plaintiff's house. *St. James Construction Co. v. Morlock*, 89 *Md.App.* 217, 597 *A.*2d 1042 (1991). The court found that because the corporate officer actually chose the materials used by the company in constructing the brick wall, he could be held personally liable under the negligent design and

construction claim. *Id.* at 1046. *See also Scribner v. O'Brien, Inc.,* 169 *Conn.* 389, 363 *A.*2d 160, 167 (1975) (affirming judgment against corporate officers of corporate contractor based in part on negligence because of defendants' daily presence at construction site, supervision of ongoing work and design participation).

B

Whatever may be the appropriate standard for limiting corporate officers' liability under the participation theory, the essential predicate for application of the theory is the commission by the corporation of tortious conduct, participation in that tortious conduct by the corporate officer and resultant injury to the plaintiff. If, however, the breach of the corporation's duty to the plaintiff is determined to be governed by contract rather than tort principles, the participation theory of tort liability is inapplicable. Accordingly, because the plaintiff's relationship with GSI initially was defined by the contract between them, we consider the principles that reliably serve to distinguish contract and tort claims.

As explained by the Appellate Division in *Wasserstein v. Kovatch,* 261 *N.J.Super.* 277, 286, 618 *A.*2d 886 (1993), "[n]otwithstanding the language of the [plaintiff's] complaint sounding in tort, the complaint essentially arises in contract rather than tort and is governed by the contract." *See also Walker Rogge, Inc. v. Chelsea Title & Guar. Co.,* 116 *N.J.* 517, 540, 562 *A.*2d 208 (1989)(holding that negligent performance allegations were merely a form of breach of contract action). Those distinctions between tort and contract actions are critical because "[a]ttaching a tort claim to a breach of contract action dramatically alters the rules governing damages." Michael Dorff, "Attaching Tort Claims to Contract Actions: An Economic Analysis of Contract," 28 *Seton Hall L.Rev.* 390, 406 (1997).

At common law a plaintiff who had a contractual relationship with the defendant was able to sue in tort if the plaintiff could establish that the alleged breach of duty constituted a "separate and independent tort." *Id.* at 407. However, "the boundary line

between tort and contract actions is not capable of clear demarcation." *New Mea Construction Corp. v. Harper,* 203 *N.J.Super.* 486, 493, 497 *A.*2d 534 (1985). Similarly, *Prosser & Keeton on the Law of Torts* states that "[t]he distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts,* § 92, at 655 (5th ed. 1984)(*Prosser & Keeton* ).

■ *Prosser & Keeton* offers seven guidelines to assist in distinguishing between tort and contract claims:

(1) Obligations imposed by law are tort obligations;

(2) Tort obligations may not be disclaimable;

(3) Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things;

(4) Recovery of intangible economic loss is generally determined by contract;

(5) There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made;

(6) Duties of affirmative action are often imposed by law apart from the promises made;

(7) Damages for a loss suffered by a promisee in reliance on a promisor to carry out a promise may be recoverable on a tort negligence theory.

[<em>Prosser & Keeton, supra,</em> § 92, at 656–58.]

Clearly relevant to the facts of this case is the fourth guideline. *Prosser & Keeton* states that "[g]enerally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things." *Id.* at 657. In fact, most jurisdictions hold that a contractor's liability for economic loss is limited to the terms of the contract.

In *Redarowicz v. Ohlendorf,* 92 *Ill.*2d 171, 65 *Ill.Dec.* 411, 441 *N.E.*2d 324 (1982), the Illinois Supreme Court held that a homeowner's economic losses were not recoverable through a negligence claim. The homeowner was seeking damages for replacement and repair costs resulting from a defective chimney. The court stated that "[t]o recover in negligence there must be a showing of harm above and beyond disappointed expectations. A

buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *Id.* at 327. *See also 17 Vista Fee Assoc. v. Teachers Insur. and Annuity Ass'n of America,* 259 *A.D.*2d 75, 693 *N.Y.S.*2d 554, 559 (N.Y.App.Div.1999)(noting that party attempting to recover economic loss under contract cannot sue in tort "notwithstanding the use of familiar tort language in its pleadings"); *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.,* 711 *So.*2d 1255, 1259 (Fla.Dist.Ct.App.1998)(reaffirming Florida's Economic Loss Rule that "prohibits a plaintiff who has a contract claim from recovering tort damages for purely economic losses in the absence of personal injury or damage to 'other property' ").

Nonetheless, relationships created by contract can give rise to affirmative duties imposed by law. For example, although limited in scope, a bailment invariably gives rise to tort liability when the bailee takes possession of the bailor's property, separate and apart from the liability imposed by the parties' contract. *Prosser & Keeton, supra,* § 92, at 658. "The obligations as between parties to such contracts are not always obligations based entirely on the manifested intent of the parties." *Ibid. See also Flintkote Co. v. Dravo Corp.,* 678 *F.*2d 942, 946 (11th Cir.1982)(recognizing that duties can be imposed on manufacturers and suppliers independent of contract, such as duty to use reasonable care not to place defective products in the market).

As explained by this Court in *Walker Rogge, supra,* 116 *N.J.* at 540, 562 *A.*2d 208, relationships can be established that "conceivably sound in both tort and contract, such as the relationship between physician and patient." Professionals such as lawyers and accountants also have been found liable under both tort and contract theories for economic losses sustained due to negligent misrepresentations made while contractual services were being performed. *Prosser & Keeton, supra,* § 92, at 659.

Several New Jersey cases illustrate the legal analysis that courts have applied in determining whether a party's claim sounds in contract or tort. In *Juliano v. Gaston,* 187 *N.J.Super.* 491, 455 *A.*2d 523 (App.Div.1982), the plaintiff homeowners brought a negli-

gence claim against one of the subcontractors who did the masonry, brick, plaster and waterproofing work for the company that had sold them their house. There was no direct contractual relationship between the parties. The defective construction required extensive repairs. The Appellate Division held that the plaintiffs had properly asserted a negligence claim against the defendant subcontractor, rejecting the defendant's argument that such claims required either personal injury or consequential damage to property. The court cited to an Indiana Supreme Court decision that recognized a subsequent home purchaser's right to seek economic damages from the original builder-vendor in a negligence action:

> The contention that a distinction should be drawn between mere 'economic loss' and personal injury is without merit. Why there should be a difference between an economic loss resulting from injury to property and an economic loss resulting from personal injury has not been revealed to us. When one is personally injured from a defect, he recovers mainly for his economic loss. Similarly, if a wife loses a husband because of injury resulting from a defect in construction, the measure of damages is totally economic loss. We fail to see any rational reason for such a distinction.
>
> [187 *N.J.Super.* at 498, 455 *A.*2d 523 (quoting *Barnes v. Mac Brown and Co., Inc.,* 264 *Ind.* 227, 342 *N.E.*2d 619 (1976)).]

The plaintiff homeowners in *Aronsohn v. Mandara,* 98 *N.J.* 92, 484 *A.*2d 675 (1984), sued the defendant contractors after discovering drainage problems caused by defects in the patio built by the defendants before plaintiffs purchased the home. The suit was based on strict liability, negligence, and breaches of express and implied warranties. This Court found that because the contract between the original homeowner and defendants did not contain a non-assignability clause, the defendants' contractual obligations had been assigned to the plaintiffs. *Id.* at 99, 484 *A.*2d 675. We emphasized that the plaintiffs were attempting to "seek[ ] the benefit of the bargain they made in their agreement to purchase the home." *Id.* at 98, 484 *A.*2d 675. The Court observed that although "[w]e do not intend to exclude the possibility that a cause of action in negligence would be maintainable," it nevertheless was unnecessary to "decide the validity of the plaintiffs' negligence claim, since ... the contractor's negligence would constitute a

breach of the contractor's implied promise to construct a patio in a workmanlike manner." *Id.* at 107, 484 *A.*2d 675.

In *New Mea, supra,* 203 *N.J.Super.* 486, 497 *A.*2d 534, the defendant homeowners in a contract action initiated by the builder of their home filed counterclaims against the builder alleging both breach of contract and negligence. The Appellate Division emphasized the fact sensitivity of cases that present claims on the fringe of tort and contract law, and suggested several factors to consider in determining whether tort or contract law applies. The court held that the defendants' counterclaims sounded in contract because there was no personal injury or consequential property damage involved in the case, and the parties' relationship was governed by a "comprehensive contractual arrangement." *Id.* at 494, 497 *A.*2d 534. The court distinguished *Gaston* by explaining that, unlike the "active" negligence that harmed third parties in that case, the builder in *New Mea* simply had failed to act in a manner that "assure[d] compliance with the contract terms, agreed upon in writing between the parties." *Id.* at 496, 497 *A.*2d 534.

Similarly, in *Album Graphics, Inc. v. Beatrice Foods Co.,* 87 *Ill.App.*3d 338, 42 *Ill.Dec.* 332, 408 *N.E.*2d 1041, 1049. (Ill.App.Ct. 1980), an Illinois appellate court refused to enforce a cause of action sounding in negligence where the plaintiff was seeking to recover remedies that essentially were contractual. The court observed that

[p]laintiff allegedly has a contract with defendant. Defendant has allegedly breached that contract. Plaintiff has suffered only economic losses. Plaintiff should have his remedy for breach of contract, but he should not be allowed to recover under tort law that which he may or may not be entitled to recover under the contract or under contract law. Hence, we necessarily hold that plaintiff in this case has failed to state a cause of action in negligence to recover purely economic losses.

[*Id.* at 1050.]

*See also Flintkote, supra,* 678 *F.*2d at 949 (holding that Georgia's "economic loss rule" barred plaintiff's negligence claim).

Two recent federal cases hold that under New Jersey law a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care. In *International Minerals & Mining Corp. v. Citicorp North America, Inc.*, 736 *F.Supp.* 587 (D.N.J.1990), a lender liability case, the corporate loan applicant's complaint included several claims sounding in tort that also related to its breach of contract action. The claims included " 'malicious, and/or intentional, and/or negligent, and/or grossly negligent' breach of the agreement to finance." *Id.* at 596. The court dismissed the claims sounding in tort because the defendant did not owe a duty of care separate and apart from the contract between the parties. *Id.* at 597. The court stated that "[i]t has long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff." *Ibid.*

In *Stewart Title Guaranty Co. v. Greenlands Realty, L.L.C.*, 58 *F.Supp.*2d 370, 373 (D.N.J.1999), the court again examined "the nebulous line dividing the realm of contract law from that of tort law." Plaintiff title insurance company sued defendant, a realty corporation, for a declaratory judgment determining that defendant had marketable title. Defendant counterclaimed, alleging that the title company had breached its fiduciary duty to protect the defendant's title to the property. In granting summary judgment for the defendant on the breach of fiduciary duty claim, the District Court relied on our decision in *Walker Rogge, supra*, 116 *N.J.* at 535, 562 *A.2d* 208, in which we held that "a title company's liability is limited to the policy and ... the company is not liable in tort for negligence." In *Walker Rogge*, we found that the cause of action for breach of fiduciary duty sounded in contract rather than tort, and remanded the matter to the trial court to determine whether the title insurance company had assumed any duties apart from those explicitly stated in the insurance policy. *Id.* at 541–42, 562 *A.2d* 208.

An independent duty was found to exist in *Scribner, supra*, 363 *A*.2d at 168. There, the Connecticut Supreme Court held a defendant corporate officer personally liable for drainage problems that developed on the plaintiff's property. The court recognized that, apart from any contractual duties, the defendant had held himself out to be a skilled builder, which in turn imposed on him a duty of care consistent with that representation. *Id.* at 167. The court based its holding on the fact that the defendant builder "was present at the property on a daily basis supervising the excavation of the land and construction on the dwelling." *Ibid.*

### III

Under limited circumstances this Court has applied the participation theory to hold corporate officers personally liable for tortious conduct. See *Hirsch, supra*, 4 *N.J.* at 416–17, 73 *A*.2d 173 (holding personally liable officers of corporation that personally participated in conversion of proceeds of accounts receivable assigned to plaintiff). Nonetheless, because we are convinced that plaintiff has not pled and supported a cause of action sounding in tort, and has failed to establish that either GSI or defendants Indyk and Caton owed an independent duty to plaintiff outside the scope of the contract, the theory cannot be applied to the facts in this record.

In rejecting the Appellate Division's reliance on the participation theory of liability, we rely on the principles set forth in state and federal cases on whether a cause of action sounds in tort or contract. *See, e.g., Aronsohn, supra*, 98 *N.J.* 92, 484 *A*.2d 675; *New Mea, supra*, 203 *N.J.Super.* 486, 497 *A*.2d 534; *International Minerals, supra*, 736 *F.Supp.* 587; and *Stewart Title, supra*, 58 *F.Supp*.2d 370. Plaintiff's complaint alleged causes of action based on negligent design and negligent misrepresentation. Irrespective of the terminology used in the complaint, however, we are persuaded that this case is essentially a basic breach of contract case, and that plaintiff, through her tort allegations, simply is seeking to enhance the benefit of the bargain she contracted for

with defendant GSI. See *Wasserstein, supra,* 261 *N.J.Super.* at 286, 618 *A.*2d 886. *See also New Mea,* 203 *N.J.Super.* at 494, 497 *A.*2d 534 ("Merely nominally casting this cause of action as one for negligent supervision does not alter its nature.").

When a company agrees to render a service or sell a product, a contract normally will define the scope of the parties' specific obligations. Moreover, in commercial transactions the law may recognize certain implied contractual obligations, such as a builder's obligation to construct a building or structure in a workmanlike fashion, see *Aronsohn, supra,* 98 *N.J.* at 107, 484 *A.*2d 675, or an implied obligation of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.,* 148 *N.J.* 396, 420, 690 *A.*2d 575 (1997).

In this case the scope of the parties' obligations was defined by the contract, and the contract imposed responsibilities on defendant GSI only, and not on defendants Indyk and Caton. The expectation was that defendant corporation would design and prepare the requisite specifications for the athletic fields and that plaintiff would compensate the corporation for the work. There appears to have been no expectation that the individual defendants would be personally liable under the contract. Plaintiff's original request for a proposal was directed toward defendant GSI, and the responses received by plaintiff were on a letterhead that specifically included the corporate names "Turfcon" and "GSI, Inc." Clearly, plaintiff was aware throughout the transaction that she was dealing with a corporate entity and that defendants Indyk and Caton were acting on GSI's behalf. See *New Mea, supra,* 203 *N.J.Super.* at 497, 497 *A.*2d 534.

Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. *New Mea, supra,* 203 *N.J.Super.* at 493–94, 497 *A.*2d 534; *International Minerals, supra,* 736 *F.Supp.* at 597. In this transaction, we are unable to discern any duty owed to the plaintiff that is independent of the duties that arose under the contract. Defendant GSI possessed specific

technical skills that it was obligated to apply under the contract. Its failure to do so was not a violation of an obligation imposed by law, but rather a breach of its contractual duties. See *New Mea*, *supra*, 203 *N.J.Super.* at 494, 497 *A.*2d 534 ("The obligation to use material specified in the contract rather than some lesser-grade material was clearly not an obligation imposed by law.").

Our conclusion is reinforced by the existence of duties that are specifically imposed by law in New Jersey, which can be enforced separately and apart from contractual obligations. For example, a physician is required to act with a "degree of care, knowledge, and skill ordinarily possessed and exercised" in analogous situations by the average member of the medical community. *Aiello v. Muhlenberg Regional Medical Center*, 159 *N.J.* 618, 626, 733 *A.*2d 433 (1999). *See also Morlino v. Medical Center of Ocean County*, 152 *N.J.* 563, 706 *A.*2d 721 (1998)(recognizing duty imposed by law requiring physician to act with required knowledge, skill and care in diagnosis and treatment of patient).

In addition, the law imposes duties on attorneys. See *McGrogan v. Till*, 167 *N.J.* 414, 425, 771 *A.*2d 1187 (2001)("Legal malpractice suits are grounded in the tort of negligence."). Similar duties also are imposed on insurance brokers. See *Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.*, 135 *N.J.* 182, 189, 638 *A.*2d 1288 (1994) (recognizing that "[a]t common law both agents and brokers, when acting on behalf of an insured, owe the insured a duty of due care"). Similarly, our product liability law imposes certain duties on manufacturers that are independent of obligations arising from specific contracts. *Bessemer Processing, Inc., supra*, 155 *N.J.* at 297, 714 *A.*2d 898 (recognizing manufacturer's duty to warn about potentially harmful effects of product).

We acknowledge that a different analysis and result could be implicated if a soccer player sustained personal injuries proximately caused by the allegedly deficient design work provided by GSI. In that context, because no contract defined the obligations of the parties, a critical issue would be whether GSI owed an

independent duty of care to prospective users of the field and, if so, whether the participation theory would apply. We need not resolve those issues. Here, however, plaintiff alleges damages that do not arise from any duty imposed by law but rather result from GSI's alleged breach of contract, and include the cost of preparing new specifications and of hiring a new contractor to reconstruct the soccer field. Those allegations are analogous to the claims in *New Mea, supra,* 203 *N.J.Super.* at 494, 497 *A.*2d 534, where the Appellate Division declined to hold a builder personally liable for damages resulting from negligent workmanship. The court held that "the injury suffered in this case is the type not ordinarily alleged in a tort case. Here there is not personal injury or consequential property damage arising from a traumatic event." *Id.*

None of the parties dispute the existence of a valid contract between plaintiff and defendant GSI, and GSI's alleged breach of that contract clearly can give rise to contractual liability. However, plaintiff has since voluntarily dismissed her claims against defendant GSI. As noted, that contract did not require GSI to provide a bond or demonstrate evidence of professional liability insurance. Nonetheless, irrespective of the allegations in the complaint that sound in tort, plaintiff cannot convert basic contract claims into negligence claims in order to create a basis for the imposition of personal liability on corporate officers.

## IV

Because this appeal essentially involves a breach of contract claim, making the participation theory of individual liability inapplicable, we reverse the Appellate Division's judgment and reinstate summary judgment for defendants Indyk and Caton.

*For reversal and reinstatement*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.